# L. J. Childs *v.* County of Crawford, Appellant.

*Public officers—County commissioners—Bridges—Negligence—Latent defects—Actual notice.*

The measure of care and prudence demanded of county commissioners in the care and supervision of county bridges is the care and prudence exercised by ordinarily prudent men in their own affairs, and where the defect in a lawful structure is latent, the officers must have actual notice.

*Bridges—Negligence—Accidents—County not an insurer.*

A county bridge was built in 1877 and remained in constant use till 1888 when it was rebuilt on the same plan. An accident occurred in 1894 whereby the bridge fell and plaintiff was injured. A few weeks before the accident it had been thoroughly inspected by the county commissioners and all patent defects repaired. The evidence disclosed as the cause of the accident a concealed breakage in an iron rod which had probably existed for a long time. Its existence was not known or conjectured until the bridge fell, and no method of examination was suggested that would have disclosed the defect. *Held,* that to hold the county responsible for damages resulting from the unexpected fall of the bridge under these circumstances would practically make the county an insurer against accidents happening to persons using county bridges.

*Bridges—Responsibility of county—Charge of court.*

A county is not bound to adopt the best known plan for bridge building. Its duty is fulfilled by the adoption of a plan approved by competent mechanics as suitable for the place where the bridge is to be built, and by vigilance in seeing that its construction was conducted by reasonably competent builders. It is to be assumed, in the absence of evidence to the contrary, that upon the erection of the bridge it was examined by legally appointed viewers; and in the absence of direct proof of negligent acceptance by the county it was error to submit to the jury the question " Did the bridge fall by reason of a defect in the original construction."

Argued May 5, 1896. Appeal, No. 138, Jan. T., 1896, by defendant, from judgment of C. P. Warren Co., June T., 1895, No. 29, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Trespass to recover damages for injury by the breaking down of a bridge. Before NOYES, P. J. Verdict for plaintiff for $2,600.

The facts sufficiently appear from the charge of the court, which was in part as follows:

About the 4th of August, 1894, the plaintiff, Mr. L. J. Childs, was either passing upon or passing over a bridge over Oil creek, near Hydetown, in the county of Crawford, with a team of horses and a load of hemlock bark, when the bridge collapsed; he was thrown with his team and wagon into the stream, and received personal injuries, and his property was somewhat damaged. So much is undisputed. It is also undisputed that the bridge was a county bridge, and was erected by the county officers in pursuance of their duty; and no question was made that it was the duty of the county officers to keep it in repair. The plaintiff claims that the fall of the bridge was due to the neglect of duty by the county commissioners; either a neglect in the construction of the bridge to take such care as would provide a safe bridge, or a neglect in keeping it in repair afterwards.

In case the injury to the plaintiff resulted directly from the negligence of the county commissioners, and without any fault on the part of the plaintiff himself, then the county would be liable for the damages sustained; not otherwise. Unless there was such a neglect of duty on the part of the county commissioners, the county would not be liable, however great is the plaintiff's misfortune; nor would it be liable if his own carelessness in any degree contributed to the loss.

The defendant's first point is as follows :

1st. Plaintiff's claim in this case grows out of the alleged negligence of the defendant in not keeping the bridge in question in perfect repair (before reading the rest of it, we should add to that, that he claims also that it grows out of their negligence in the original construction of the bridge; such a claim is made here; so you must consider that as part of this statement), and it is incumbent upon the plaintiff to prove affirmatively negligence or the want of care on the part of the county commissioners, and not leave it to inference. The simple fact of an accident occurring to plaintiff does not prove that the defendants were guilty of negligence, and in the absence of affirmative proof of such want of care upon the part of the county authorities the plaintiff has no case against the defendant, and he is not entitled to recover in this suit. *Answer :* We answer that point in the affirmative. The mere fact that the accident has occurred, that the bridge has broken down,

that the plaintiff has been injured, is not sufficient proof that the defendants are negligent. Affirmative proof of some act done by the commissioners, or some precaution omitted by them, which, under the instructions we shall give you, would amount to negligence, is necessary in order to establish the plaintiff's case.

The plaintiff asks us to instruct you on these points:

1st. The law imposes the duty upon the county of Crawford to construct its bridges in such manner and of such material and strength, having due regard to the kind and frequency of travel, as may be necessary to provide for the safe passage over them of all persons and teams, in pursuit of their lawful occupation, and with usual loads of produce and merchandise. *Answer :* (This much of the point we answer in the affirmative.)

And if the jury believe that the bridge in question was constructed so that the breaking of one rod would cause the fall of the bridge, this was faulty original construction, and was negligent. *Answer :* That portion of it, gentlemen, we refer to you, under the instructions which we shall give you; we cannot say, as a matter of law, that any particular act is negligence.

2d. The law also makes it a duty of the county of Crawford to maintain and repair its bridges when damaged, or when dangerous or impassable from decay, and to do such repairing in a workmanlike and skillful manner, and with sound materials ; and, in order to discharge this duty, the commissioners are bound to exercise watchfulness over the county bridges, and have them frequently and carefully examined and inspected by competent persons, and to apply proper tests to ascertain the soundness and strength of the materials composing them. If the facts are that the road, of which the bridge forms a part, is one frequently traveled, and often and continuously used for the passage of heavy loads, the care and watchfulness required is greater than under different circumstances. *Answer :* That point is answered in the affirmative. [1]

Defendant asks us to instruct you:

2d. A county is only a quasi corporation, and is not liable to the same measure of responsibility as a chartered or municipal corporation, and it is not an insurer against all defects on a bridge or in a highway, which are hidden as well as open. *Answer :* That is answered in the affirmative so far as to say, a

county is not an insurer; it is not liable to the same degree of care as at least some chartered corporations; it is not required to give the same extraordinary degree of care that a railroad company is to its bridges over which passengers pass on the trains. A railroad corporation transporting passengers for hire is bound to use every precaution for their protection; the greatest possible care; it is not that degree which is to be applied to a county; the measure of a county's responsibility is ordinary care and prudence under the circumstances of the case.

3d. Where there is no structural defect in a bridge, a county is not liable for an injury occurring by reason of its unsafe condition at the time, unless it had proper notice of the defective condition, or the same was so notorious as to be evident to all persons passing. If the defective condition is such that it is only discoverable by one out of many persons passing, or if it is only discoverable at the instant of the accident, it cannot be said to be notorious, or to be such a defect as that the municipality is chargeable with constructive notice of its existence. *Answer:* This point is affirmed, except that we should call your attention to the fact that the duty rests upon a county not merely to repair a bridge when they know there is a defect, or when it is so open and notorious that everybody knows it, but they are required to occasionally examine it; they are required to give it a more careful examination than a casual passer is; or, if there is a defect in a bridge which would be discovered by reasonable examination by persons of ordinary skill in such business, and it had continued so long that by such examination as ordinary care and prudence required it would have been discovered, then the county would be chargeable with such constructive notice of such defect, although it might not be known to the general public, or the ordinary passer.

Plaintiff's third point is

3d. Upon being informed or receiving notice that a county bridge is unsafe or in bad condition, it becomes the duty of the county commissioners to examine it thoroughly and repair it so as to render it perfectly safe, or to close it up so as to prevent the public from using it. Actual notice is not in all cases necessary. If the bad condition of the bridge, or the defects in it were obvious, or if they were of long duration, or if the dangerous condition of the bridge was so notorious in the vicin-

ity, among those having occasion to pass over it, then the county
commissioners in the exercise of the duty of reasonable super-
vision and inspection ought to have known of them, and the
county is chargeable with constructive notice of such defects,
and of such as might have been discovered by reasonable effort.
*Answer :* I answer that point in the negative ; and I will in-
struct you upon the subject of that point as follows : Upon
being informed, or receiving notice that a county bridge is
unsafe or in bad condition, it became the duty of the county
commissioners to examine it thoroughly, and repair it so as to
render it perfectly safe,—by which I mean not absolutely safe,
but so that when examined by persons of skill in the business
it would appear safe, and give no indication of insecurity ; or
to close it up so as to prevent the public from using it. Actual
notice is not in all cases necessary. If the bad condition of the
bridge, or defects in it, were obvious and of so long duration as
to have become notorious, so that the county commissioners in
the exercise of their duty of reasonable supervision and inspec-
tion ought to have known them ; or if not obvious—that is,
open to discovery by casual inspection—they were discoverable
by the use of tests known generally to persons skilled in the
art of bridge building and repairing, reasonable tests, which
common prudence would require to be applied, and continued
so long that by the use of such tests and common prudence and
foresight they should have been discovered and remedied, the
county is chargeable with constructive notice. That is to say :
if the facts were as stated in this proposition. I don't say they
are so, but if you find they are, then you are to treat the county
commissioners as if they actually knew of those defects. If
they ought to have known it, the law would be the same as
though they did know it.

Plaintiff's fourth point :

4th. If the jury believe from the evidence that the bridge in
question was an open, uncovered county bridge, forming part of a
highway, over which numbers of people were frequently passing
with teams and loaded wagons ; that it was repaired, or rebuilt,
by the county of Crawford in the summer of 1888, and old tim-
bers and old iron rods from a bridge built several years before
were in part used in such repairing, or rebuilding ; that one of
said iron rods, being found too short, was imperfectly spliced

and welded, or was composed of imperfect iron; that some of the timbers and braces in said bridge had become rotten a considerable time before the falling of the bridge; that such decay was occasioned in part by the accumulation of mud and water upon one end of said bridge; that across one end of said bridge a thick plank had been placed, over which loaded wagons necessarily passed in crossing the same, causing them to drop heavily upon it; that the swaying and vibration of the bridge, and the jar resulting from wagons dropping upon it, continued through several weeks; that these things weakened the structure and caused the iron of one of the rods to break, at the welded point, and that, from these causes, the bridge fell; that the rottenness of the timbers was discoverable by proper examination, and the swaying and vibration of the bridge such as to attract the attention of and alarm people passing over it; that the bad condition of the bridge was a matter of notoriety in its vicinity; and that proper examination and tests would have shown the weakness of the rod, and that these last three facts existed and continued for several weeks before the bridge fell; then the defendant was negligent, and, if the plaintiff was injured in his person, and suffered damage to his property, by falling with said bridge while passing over it in pursuit of his business, he is entitled to recover. *Answer:* This point, gentlemen, presents the view of the facts entertained by the plaintiff, and which have been argued to you by his counsel. We submit the point, and the facts contained in it, to your consideration. Whether the facts are so or not, is for you to say. If you find them all as stated in the point, whether they constitute, taken together, such neglect of duty on the part of the commissioners, which I have defined to you as legally constituting negligence, is for you to say. Now, gentlemen, in determining the first question, whether or not the county commissioners were negligent in the original construction, or in failing to repair this bridge, and whether such negligence was the proximate and immediate cause of this accident, applying these principles to the facts in the case as you find them—first, what was the cause of the accident? What occasioned it? Which one of the matters recited in the point which I have just read to you was the real cause of it? Or was it the result of a combination of many of these causes together? What was the reason why the bridge

fell? You should determine that first. Because, if you find the defendants were negligent, you ought to be able to put your finger upon the thing which they have done which they ought not to have done; or the thing which they omitted to do, which they ought to have done. The standard is, ordinary care and prudence under the circumstances. More care is required in taking care of a bridge over which the public pass, and over which there is a great deal of travel, than an ordinary highway where a defect is not likely to be very dangerous. According to the circumstances the commissioners must be careful. And they are not justified in trusting to their own knowledge and their own discretion, if the matter is one which requires more competent understanding, training and skill; they should avail themselves of ordinary skill in the business when it is required. Now, under the circumstances, how was it? Did the bridge fall by reason of a defect in the original construction? In other words, was it because the plan was wrong? Or was the plan all right, reasonably safe, such as an ordinarily prudent man, skilled in the art of bridge building, adopted? Or was the fall of the bridge caused by the breaking of a rod, and was that a defect which ordinary care could discover when the bridge was built, or which might have been discovered by persons of ordinary skill and prudence in making such inspection as the commissioners were bound to make from time to time? Or was it due to the rotting of the timbers? Apply these principles to the facts as you find them, and determine first of all, whether or not this accident was one which could reasonably be anticipated by persons of ordinary care and skill, or resulted from some cause not discoverable by the exercise of such care and skill. Or was it by the neglect or omission of something that ordinary care and prudence would have adopted? Or the adoption of some plan which ordinary care and skill would have induced men of that care, prudence, and skill, to have avoided.

If you find there was no neglect of duty, no negligence under these instructions, that is the end of this case, the verdict should be for the defendant. If you find there was negligence, under these instructions, and that the negligence caused the fall of the bridge, then you must proceed further. There is, however, another element to the negligence. If the bridge was properly constructed originally, and the fall of the bridge is due to some-

thing which occurred since—a want of repair, then the question of notice to the county commissioners becomes an important factor.   They would not be liable even though there was a defect, and even though the bridge fell by reason of it, if they did not actually know of its existence, unless the circumstances were such that they ought to have known it in the exercise of their ordinary duty, which I have defined to you.   Keep it in mind in determining the responsibility of these defendants. What was the defect that caused the bridge to fall?   How long had it been there?   Then determine whether or not it amounted, under the instructions I have given you, to the want of ordinary care and prudence under the circumstances of the case.

Now, if you find that the accident resulted directly from the negligence of the county, under these instructions, there is still another question; and that is, whether or not the plaintiff was in fault.   Was he careless?   Was he negligent?   Did his neg· ligence in any degree contribute to this loss?   If it did he cannot recover.   In determining the plaintiff's negligence, or want of care, consider exactly his situation.   He is a traveler; he is not responsible for the care of the bridge; it is not his duty to make examinations of it, or anything of that sort; but he is bound to use his senses, his eyes and ears, and not run into danger unnecessarily.   He testifies that he did not know of any defect in the bridge.   There was another road around that he could have gone; another road not so convenient, but he could have gone by it; but he said he didn't.   There is considerable evidence as to the condition of this bridge, and the apparent danger that there was.   The plaintiff testifies that he was traveling over it frequently.   And you will have to consider, under all the evidence, whether or not the bridge was apparently dangerous to anybody passing over it; and whether its fall was due to that condition, or want of repair, which any traveler giving ordinary attention to what he was doing would see; and whether the plaintiff did not know it.   That is a matter of fact for you, under all the circumstances to determine.   The plank at the end of the bridge, which it is alleged caused a jolt as the wagon went on to the bridge, the plaintiff testifies he knew that condition at the time.   Of course, there is no direct evidence of negligence on the part of the plaintiff.   It is altogether a matter of inference from the facts, and it is altogether for the jury.   I

merely call your attention to those facts, merely that you may know how to consider the questions that arise before you.

*Errors assigned* among others were, (1) answer to plaintiff's second point, reciting same ; (8) the court erred specifically in its charge to the jury in not directing its attention to the evidence of care and diligence exercised by the county authorities in regard to this bridge and to their duties and responsibilities in regard to county bridges generally.

*Pearson Church*, *C. W. Tyler* with him, for appellant.—As to responsibilities of counties and townships as quasi corporations cited: Rapho Twp. v. Moore, 68 Pa. 404. As to latent defects : Shear. & Red. on Negligence, secs. 158 and 407. A county or township is not an insurer against all defects or obstructions latent as well as patent in a public highway: Otto Twp. v. Wolf, 106 Pa. 608; Burns v. Bradford, 137 Pa. 361 ; Lohr v. Phillipsburg, 156 Pa. 246, and 165 Pa. 109.

*Roger Sherman*, *W. M. Lindsey* with him, for appellee.—The seventh and eighth assignments of error are not in accordance with the rules of court and should be disregarded. As to the duty of commissioners touching repairs of the bridge, see Erie v. Schwingle, 22 Pa. 384 ; Commissioners v. Wood, 10 Pa. 93 ; Dean v. New Milford Twp., 5 W. & S. 545 ; Fritsch v. Allegheny, 91 Pa. 226.

OPINION BY MR. JUSTICE WILLIAMS, May 28, 1896 :

This case was tried with care by the learned judge who presided at the trial. The charge was thoroughly impartial, and presented the questions that were submitted to the jury very clearly; but we are of opinion that the criticism made upon it by the eighth assignment of error is well founded. It held the county commissioners to a measure of accountability so strict as practically to make the county an insurer against accident happening to persons using the county bridges. The injury sued for was sustained by the falling of the roadway of the bridge into the stream while the plaintiff was crossing the bridge with his team and a load of hemlock bark. The evidence shows that the bridge was built upon a plan in common use at the time

of its construction, and still in use throughout the state. It was built in 1877 and was in·constant use until 1888, when it was rebuilt upon the same plan. The accident occurred in 1894. But a few weeks before it happened, the county commissioners had caused the bridge to be examined, and had been present participating personally in the examination. The result of the examination was that the planks were.found to be decaying to such an extent as to make the roadway insecure, and they were taken up and new ones put in their places; but the timbers were found to be sound and the ironwork strong and safe. The roadway was supported between the abutments by means of heavy overhead truss timbers, from which seven iron rods an inch and a half in diameter descended on each side, and were secured to the needle beams on which the stringers supporting the planks were laid. The truss timbers, the needle beams, the iron rods that connected them, the stringers and the plank, were believed as the result of this examination and repair to be in good order and to make a secure structure for use by the traveling public. After the accident, an examination disclosed the fact that one of the iron rods was broken, and that part of the way across the rod the iron was discolored, indicating that so far at least the break was an old one and may have existed for a considerable length of time. The theory that prevailed at the trial and seemed best to comport with the known facts, was that this rod weakened by the concealed break had given way, and the roadway settling at that point had thrown an increased weight and strain on the other rods so that they had also given way and let the roadway fall to the stream. The question on which the liability of the county depended was whether the defect in the rod that gave way was known or ought to have been known to the commissioners.

The fact that it was not known is practically conceded. What is there in the evidence to show that it should have been known? We find nothing except the mere fact that the subsequent examination made it apparent that it had existed for some time. But this is not enough. To sustain this action, it must appear that the commissioners were guilty of negligence in the discharge of their official duties to the public. They had just made a careful examination and repair of the bridge, but neither they nor their employees discerned the defect in this rod.

Those living near the bridge and using it most frequently had not discovered it. Its existence was not known or conjectured till the bridge fell. No method of examining and testing a structure like this has been suggested that would have disclosed the defect short of an actual taking down of the needle beams and the timbers on which the roadway rests, and the removal of the rods from their places, and their examination separately; and it is not certain that even this would have discovered the latent or concealed defect. What is it then about which the commissioners have failed to exercise the measure of care which the law imposed on them? What have they left undone that it was their duty to do? The measure of care and prudence required of them is the care and prudence exercised by ordinarily prudent men in their own affairs, and where the defect in a lawful structure is latent, the officers must have actual notice, to make repair a duty: Rapho et al. v. Moore, 68 Pa. 404.

The necessity for a county bridge and the precise point at which it shall be located are determined under the supervision of the court. Whether erected by the commissioners or under contract, it must be viewed and inspected by six viewers appointed by the court whose duty it is to see if the bridge has been built in accordance with the contract, or the plans, and should be paid for by the county. They report to the court of quarter sessions and their report when approved is the authority for making payment to the contractor or builder. The whole proceeding is for the benefit of the public, is conducted in the court of quarter sessions, and the important function performed by the county is to pay the cost of construction under the report of the viewers when approved by the court, and thereafter to make the needed repairs.

There was no proof in this case that justified the submission to the jury of the question whether the plan on which the bridge was built was so defective as to make its adoption an act of negligence. The learned judge did however as we understand him leave this question to the jury. He said, " Did the bridge fall by reason of a defect in the original construction? In other words, was it because the plan was wrong? " The county was not bound to adopt the best known plan for bridge building. It was bound to adopt a plan approved by competent mechanics

as suitable for the place at which the bridge was to be built, and to see that its construction was conducted by reasonably competent builders. When it was completed, it was the duty of the county to see that it was duly examined by viewers appointed by the court for that purpose, and on the confirmation or approval of their report, to pay over to the contractor or builder the price of the work and materials furnished. As this was a county bridge, we assume that it was built, inspected, approved and paid for as the law requires. No question about whether the plan was wrong seems to have been raised at any stage of the proceedings and we do not think it can be raised now. There is but one question in this case as it is presented on this record, and that is whether the commissioners ought to have known of the defect in the rod which gave way. What test should have been employed that they did not employ to determine the security of the bridge? In what respect were they negligent? If they examined this bridge with ordinary care and made all the repairs that on such examination were thought by themselves and their mechanics acting in good faith to be needed, they cannot be charged with negligence, and the county is not liable in this action.

The judgment is reversed and a venire de novo awarded.