Freedom Oil Works Co., Appellant, *v.* Beaver Co.

Kredel, Appellant, *v.* Beaver Co.

Argued October 7, 1929.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*F. G. Moorhead,* for appellants.—In all cases of this kind where negligence is attributed to a defendant, the burden is on the plaintiff to prove the causal connection between the alleged negligence and the accident. The general rule is stated in Bruggeman v. York, 254 Pa. 430.

The case was for the jury: Humphreys v. Armstrong Co., 56 Pa. 204; Hays v. Gallagher, 72 Pa. 136; McCormick v. Twp., 112 Pa. 185; Clulow v. McClelland, 151 Pa. 583; Coulter v. Twp., 164 Pa. 543; Sheridan v. Twp., 180 Pa. 439; Smith v. Twp., 206 Pa. 7; Gehringer v. Co., 231 Pa. 497; Eichenhofer v. Phila., 248 Pa. 365; Case v. Navigation Co., 248 Pa. 598; Childs v. Co., 176 Pa. 139; Clark v. Co., 260 Pa. 199; Travers v. Co., 280 Pa. 335; Knopf v. Co., 292 Pa. 237.

*Thompson Bradshaw,* with him *Sam B. Wilson,* County Solicitor, for appellee.—Plaintiff's theory of structural frailty was not proved; the opinion of his engineer is not self-sustaining and admits of the theory contended for by defendant: Mudano v. Transit Co., 289 Pa. 51.

Where the theory of liability for the fall of a county bridge is not a defect therein, patent or latent, but frailty due to inadequate structural plan or design for present day needs, the county is liable if it appears by the testimony of bridge engineers, whose competence is not attacked, that, in their professional opinion, the bridge was adequate in structural plan and design and in accord with good engineering practice: Travers v. Co., 280 Pa. 336; McCormick v. Twp., 112 Pa. 185; Childs v. Co., 176 Pa. 139; Murdaugh v. Boro., 214 Pa. 384; Knopf v. Co., 292 Pa. 237; Gehringer v. Co., 231 Pa. 497.

OPINION BY MR. JUSTICE FRAZER, November 25, 1929:

These two cases were tried together in the lower court; they had their origin in the same occurrence, the collapse and fall of a county bridge, and the consequent damage to the property of one plaintiff and injury to the person of the other. The jury returned verdicts for both plaintiffs, and judgments n. o. v. for defendant were subsequently entered in each case and these appeals followed.

On an August afternoon in 1927, appellant Kredel drove a motor truck, belonging to the Freedom Oil Works Company, the other appellant, which with its load of oil and gasoline weighed about 18,000 pounds, upon a bridge erected by defendant county in 1871. The vehicle had reached the opposite end, when, as the front wheels left the flooring, the structure collapsed, carrying with it the truck and driver.

The broken parts of the bridge were subsequently examined by experts and no defects, open or latent, were discovered and appellants' expert witness testified, after such examination, that the bridge had not deteriorated, had been painted and repainted at various times, and was in "fairly good physical condition"; there were, he said, "a few minor defects in it, but not of a serious character." Admitting these conditions, appellants base

their claim of negligence on the contention that the county had not constructed the bridge of sufficient strength to carry safely the heavy vehicles and weight common to present day traffic, and that the bridge had not been properly inspected by the county commissioners.

As to the charge of lack of due inspections, the court below found, under the uncontradicted evidence of defendant, that the bridge was inspected by the commissioners, or by their direction, and parts tightened where needed, repaired and painted in 1920 or 1921, and was also inspected or observed by the county engineers and one of the county commissioners in 1924, and reported at the time of these examinations and inspections that it was in good condition and capable of carrying all traffic which ordinarily might be expected to pass over it. In connection with this phase of the case, the location of the bridge is of importance. It was not a part of a busily traveled highway, over which large trucks carrying heavy loads of materials and merchandise are continuously passing. It was part of an isolated roadway, described by plaintiff Kredel in his testimony as "a regular country dirt road, rough in places." It was used only infrequently by heavy vehicles; it was apparently utilized as a convenient and short-cut way in a sparsely settled part of the county, and the bridge was located where, as one of the commissioners, who had been there "many times," testified, "you can sit there for hours and see nothing, and hear nothing but the blackbirds whistling about there." It provided, it seems, a convenient road for the plaintiff oil and gas company, and one or two other similar plants, to transport their oil and gasoline to customers in the neighborhood. In fact, at the time the truck fell with the bridge, it was carrying a load of oil and gasoline from the Freedom Oil Works to a customer, whose country store was beyond the bridge, who evidently required a speedy replenishment. Kredel had frequently driven loaded trucks over the bridge for

his employer, without the slightest sign of defects showing in the structure; these supplies, however, were always of a much less weight than the one being transported at the time of the accident,—a great deal less, in fact, since the total weight of the latter was 3,000 pounds greater than any he had previously taken across the bridge.

Here, then, was a situation where the county commissioners had provided expert inspections of the bridge, had repaired, painted and repainted it at different periods, and had been assured by their inspectors that it was a safe structure for the traffic customarily passing over it. The dirt road and the bridge were familiar to both appellants for at least the preceding eight years; they were aware it was an old structure and yet ventured to cross it with a weight of 3,000 pounds in excess of any loaded truck they had before driven upon it. To recover damages in cases of this character it is necessary that lack of due precaution for the protection of the public shall be established by the testimony: Travers v. Delaware Co., 280 Pa. 335, 338. In our opinion the evidence shows the county commissioners made honest, substantial and adequate efforts to maintain the bridge in question in condition and kept it adequate to the ordinary demands of traffic that could reasonably be expected to pass over it; but were not compelled to provide, for that particular locality, a bridge capable of carrying the enormous vehicles and loads customarily using paved and much traveled great highways. The facts and circumstances here are similar to those in the case of McCormick v. Township of Washington, 112 Pa. 185, 196, where this court said a township "is not required to assume that its bridges will be used in an unusual and extraordinary manner, either by crossing at great speed or by the passing of a very large and unusual weight. As it does not anticipate any use it is not required to so build as to protect against injury resulting from such reckless conduct. Its liability stops with

constructing and maintaining its bridges so as to pro-
tect against injury by a reasonable, proper and probable
use thereof in view of the surrounding circumstances,
such as the extent, kind and nature of the travel, and
business on the road of which it forms a part."

Under the evidence showing location, character and
customary use of the bridge in question, how could the
county commissioners be reasonably called upon to in-
crease its carrying capacity? For fifty-six years it had
safely served the purposes for which it was originally
designed and erected. Plaintiffs' expert testified that it
had not in that long time deteriorated; no collapse or
incipient collapse, so far as the record shows, had before
happened, and it was only when it was subjected to a
strain far beyond its carrying capacity by an extraordi-
nary weight put upon it that it gave way. The account-
ability of county commissioners does not extend to the
point of practically making them insurers against acci-
dents happening to persons using county bridges. If
they examined the bridge with ordinary care and made
all repairs that, on such examination, were thought by
themselves and their mechanics, acting in good faith, to
be needed, they can not be charged with negligence and
the county made liable: Childs v. Crawford Co., 176 Pa.
139, 150. The element of mutuality of care enters into
consideration of a controversy similar to the present
one, and a duty of watchfulness imposed itself upon
plaintiffs. They were thoroughly familiar with the
bridge, had driven over it numerous times, and it could
properly be expected of them to give thought to the
probability of the structure not bearing the unusual
and excessive weight they were placing upon it.

As to the matter of the specific cause of the collapse,
appellants and defendant present two different theories.
The former contend the supporting chords and bars were
insufficient to withstand the burden of the usual traffic
of the present day, that when appellant's truck reached
the end of the bridge these chords and bars, being defec-

tive in carrying power, were displaced, twisted and broken, and as the bridge fell two iron "shoes" by which the trusses were anchored at the abutment were wrenched loose and broken. Defendant contends the bridge fell, not because of any structural weakness or defect, but because either the truck was driven at an unsafe speed across the bridge, or that the driver, going slowly at first, suddenly, as he neared the opposite end, accelerated the speed, thus producing a violent jar and impact that shattered and wrenched the two "shoes" from their place, and that the structure thus unsupported fell. Both sides relied upon the testimony of their experts to sustain the opposing theories. Our careful examination of the evidence confirms the conclusion of the court below that appellants did not establish the correctness of their theory. The testimony of their expert was plainly contradictory, and while he was insistent that the bridge was structurally weak and was of the opinion that it could not safely carry more than four tons, he could not, or at least did not, reach a conclusion as to the exact cause of the accident. He found at the ruins of the bridge only one of the broken iron "shoes," which he examined. He was asked, if an examination of the other "shoe" would change his opinion as to the cause of the collapse of the bridge; he replied: "I would have to examine that shoe and see the character of the fractures and have some evidence to know...... But I can't definitely answer your question without seeing the shoe." He saw and examined the shoe at the trial, and then he gave no opinion whatsoever. He built up on the witness stand a purely hypothetical and imaginary vision of the structure of the bridge as it stood before the accident and the manner of its collapse. But this testimony had no substantial value as proof and his failure to find support for his theory in the broken anchor-shoes, rendered his evidence nothing more than conjecture, and such evidence, as the court below well said, is not sufficient upon which to base a verdict against the defendant county.

Certainly not by such testimony could plaintiff sustain the burden of proof which the law casts upon him: Mudano v. P. R. T. Co., 289 Pa. 51; Mulligan v. Lehigh Traction Co., 241 Pa. 139. It is not sufficient for an expert to say simply that the fall of the bridge might have resulted from an assigned cause; he must go further and testify at least that, taking into consideration all the attending data, it is his professional opinion that the result in question most probably came from the cause assigned: Fink v. Sheldon Axle & Spring Co., 270 Pa. 476, 479.

On the other hand, the learned court below finds, and our reading of the testimony brings us in agreement with it, that the testimony of the experts produced by defendant, who said the collapse of the bridge was caused by the breaking of the shoe and not by strain on the bottom chords, was not denied by the plaintiffs' expert. Clearly the evidence to that effect is credible and reasonable and seems to be decisive of defendant's claim that it was the displacement and shattering of the iron shoes and not weakness in the structure of the bridge that caused the collapse. It was clearly established that the displacement and breaking of the iron shoes could have been, under the circumstances of this case, produced only by an extraordinary and sudden forward acceleration of the speed of the 18,000 pound truck and its freight, while approaching the end of the bridge. The court below found these shoes were ordinarily capable of withstanding ·a much heavier strain than that produced by the truck; and the only reasonable inference is that the shoes were wrenched and pulled out of place and fractured by a sudden and excessive spurt of speed if the driver was proceeding slowly, or by a quick application of the brakes if he was driving swiftly, causing in either event an impact that tore the shoes loose. In any event, it is clearly shown that the aggregate weight of the vehicle and its contents was far in excess of the usual and ordinary weight which the county commissioners

had reason to believe a user of the bridge would subject it to; and there was no obligation resting on them to increase its carrying capacity beyond the strength contemplated in its original construction: Gehringer v. Lehigh Co., 231 Pa. 497, 507; and particularly is this so, where the bridge was not a part of a heavily traveled regular highway, but of an isolated, unpaved country road, for the ordinary use of which the structure was ample in all respects. The bridge was without defects; no old fractures were found; the original design was not defective, and the testimony as to inspections made by the commissioners and as to the absence of fraility in the construction, show that any inspection made immediately before the accident would have disclosed no dangerous conditions. The rule is well settled that actionable negligence cannot be predicated on the mere failure of the master to inspect, where an inspection would have disclosed no defects or dangers, except those which were plainly known and appreciated by the servant: 39 C. J. 416.

The evidence sustains the ruling of the court below that the plaintiff proved no actionable negligence on the part of defendant. The judgment entered in each case is affirmed.