## Wannamaker et al. *versus* Burke.

1. If an employer takes reasonable care to provide a safe room for his employees to work in, it is all the law requires of him, and if an employee has knowledge that the room is unsafe, and in the course of his employment continues to use it without notifying his employer of its unsafe condition, and without asking him to repair or remedy it, he voluntarily accepts the risk, and cannot, in case of injury from such cause, recover damages therefor.

2. An employer is not to be held to a rule which would prevent the possibility of an accident. To leave a small hole in the floor useful for the purposes for which the room is used, and not in the ordinary line of travel, partially unprotected for a few days while changes and repairs in the room are being made, is not evidence of such negligence as would enable an employee, assisting in making the changes, to recover for injuries sustained by falling into said hole.

3. Where none of the essential facts in a case are in dispute, the defendant has the right to call upon the court to declare the law in relation thereto, and to direct the jury as to what verdict they shall render.

January 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term, 1885, No. 48.

This was an action on the case brought by James P. Burke against John Wannamaker and John F. Hillman, co-partners, trading as Wannamaker & Brown, to recover damages for injuries received by him from falling with one leg into a chute on the sixth floor of defendant's clothing store, Sixth and Market streets, Philadelphia, where he was employed by the defendants to assist in the cloth sponging department. The defendants pleaded not guilty.

On the trial before HARE, P. J., the following facts appeared:

The plaintiff was an employee of the defendants who were engaged largely in the manufacture and sale of clothing. The room in which the accident occurred had, up to a few days previous to its occurrence, been used as the shirt manufactory, but it had been concluded to convert it into a cloth sponging room, and at the time of the accident, the moving of the shirt department out and the cloth department in, was being proceeded with. The carpenters of the establishment were making the necessary alterations, and the employees of the shirt and cloth departments respectively were assisting in the moving. The hole into which the plaintiff fell was necessary to the carrying on the shirt business, which creates considerable

*debris* and waste, and was made and used for the purpose of conducting the sweepings to the cellar of the building. It was in size fourteen and a half inches square, situated one inch from the side wall of the room, and protected from approach on one side by a girder which ran to the centre of the ceiling, and on the other side by a railing about a foot from it, the railing serving the additional purpose of fencing a machine repairing shop. This railing was about four feet high, and extending from the top of it over the hole and to the girder on the other side was a board. So long as the hole was so protected it was admitted to be perfectly safe.

A short time before the accident this railing was, with the machine shop to which it was attached, moved into the new shirt room, it being a necessary adjunct of the shirt business. The carpenter who had charge of the alterations placed a board over the hole after the machine shop was removed, and says he did not nail it down because he thought the additional *debris* and dirt incident to the repairs rendered it necessary to use the hole continually.

The plaintiff alleged that, being on the side of the hole the girder was on, and beyond the girder, he was called by the boss of the cloth sponging department to come and assist in preventing the fall of some cloths that were supposed to be falling from the benches upon which they were piled ; that he thereupon ran and jumped over the girder and into the hole, getting one leg in the hole and doing himself the damage complained of.

That the plaintiff was under the influence of liquor, nine witnesses testified, and the only witness for plaintiff who testified on the point declined to say that he was not intoxicated, and admitted that he smelt liquor on him.

It was shown by two witnesses that plaintiff knew of the existence of the hole, he having, after the protection, as stated, was removed, and while the repairs were going on, been seen by them several times before the accident sweeping the dust into the hole. This the plaintiff denied. There was no evidence offered to show that the defendants did not exercise due care in the selection of their servants.

The defendants presented, *inter alia,* the following points for charge :

1. That it is incumbent upon the plaintiff to show affirmatively that the defendants were guilty of negligence. That if it was intended by the defendants to cover the hole after the moving had been completed by placing boxes or other covering over the hole, the omission to do so at the time of the accident and before the moving was completed was not negligence upon the part of the defendants, and therefore the

verdict should be for the defendants. Refused. (First assignment of error.)

2. That if the jury believe the hole was for a useful purpose, a means of conveying the waste and sweepings to the cellar of the building, and in such a position in the room as not to be in the ordinary line of travel, the fact that it was uncovered or covered by boards laid across it at the time of the accident, is not evidence of negligence upon the part of the defendants, and their verdict must be for the defendants. Refused. (Second assignment of error.)

3. That an employer is not responsible under the law, for injury suffered by an employee, by reason of the negligence of a fellow employee, and therefore, if the jury find that the omission to securely cover the hole into which plaintiff fell and injured himself, was the omission of the employee who had charge of the moving or the alterations in the room, or the omission of a sub-employee, directed by a superior employee to cover the hole so as to prevent an accident, the plaintiff cannot recover, and their verdict must be for the defendants. Refused. (Third assignment of error.)

4. That if the jury believe the plaintiff knew of the existence of the hole before the accident, and continued working in the room without complaining to the defendants or manager of the business, their verdict must be for the defendants. Refused. (Fourth assignment of error.)

11. That under the evidence their verdict must be for the defendants. Refused. (Ninth assignment of error.)

Verdict for the plaintiff for $1,800, and thereupon judgment. Whereupon the defendants took this writ, assigning for error, *inter alia,* the refusal of the court to affirm their points as before set out.

*P. F. Rothermel, Jr.,* for plaintiff in error.—Was not the negligence (admitting it to be such) of which the plaintiff below complained as the cause of his injury, the negligence of a fellow servant, for whose act the defendants were not responsible to the plaintiff, and hence the verdict and judgment thereon against the law under the evidence? The sole exception to the rule just stated, arising from the nature of the powers conferred by the master on the servant is thus given in Lehigh Valley Coal Co. *v.* Jones, 5 Norris, 433. "Where the master has placed the entire charge of his business in the hands of an agent exercising no authority and no superintendence of his own therein, he may be liable for the negligence of such an agent to a subordinate employee:" Keystone Bridge Co. *v.* Newberry, 15 Norris, 246; National Tube Works *v.* Bedell, Id., 175; Canal Co. *v.* Carroll, 8 Id., 374;

Caldwell *v.* Brown, 3 P. F. S., 453; Ryan *v.* R. R. Co., 11 Harris, 384; Frazier *v.* R. Co., 2 Wr., 104; Oil Co. *v.* Gilson, 13 P. F. S., 146; Hofnagle *v.* Railroad, 55 N. Y., 608; Wright *v.* Railroad, 25 Id., 565; Albro *v.* Canal Co., 6 Cush., 75; Reid *v.* Coal Co., 3 Macqueen's House of Lords Cases,266; Howells *v.* Langdore Steel Co., L. R., 10 Q. B., 62; Wilson *v.* Merry, 1 House of Lords Scotch Cases, 326. The nature of the relation existing between the defendants and Messrs. Ogden and Sidebotham, the first and second in importance respectively of defendants' employers, was testified to by but three witnesses, Mr. Wannamaker of defendants, and Ogden and Sidebotham, and their testimony established beyond a question that the defendants had not " placed their business in their hands, exercising no authority or superintendence of their own therein," but on the contrary that defendants retained entire control and supervision. The plaintiff knew of the existence of the hole and its unprotected condition. He knew of the changes being made, and was assisting in making them. He voluntarily assumed the risk. He did not object to it; notify his employers of it; ask that it be repaired or guarded.

In Mansfield Coal &c. Co. *v.* McEnery, 10 Norris, 195, Mr. Justice PAXSON said: "It has been repeatedly held, in fact there is no conflict of authority upon this question, that where an employee has knowledge of machinery being defective and dangerous, and in the course of his employment continues to use it without notifying his employer of such defect, and asking him to repair, he voluntarily accepts the risk, and cannot, in case of injury from such cause, recover damages therefor." The same is held in Frazier *v.* R. R. Co., 38 Pa. St., 104; Patterson *v.* R. R., 76 Id., 389; Assop *v.* Yates, 2 H. & N., 768; Britton *v.* R. R , 27 Exch., 355; Saxton *v.* Hawksworth, 26 L. T., N. S., 851–2; Ogden *v.* Rummens, 3 F. & F., 751; Priestley *v.* Fowler, 3 M. & W., 1; Dynen *v.* Leach, 26 L. J. Exch., 221; Buzzell *v.* Man'f. Co., 48 Me., 121; Fifield *v.* R. R., 42 N. H., 241; Coombs *v.* New Bedford Cordage Co., 102 Mass., 586; Ladd *v.* R. R., 119 Id., 412; Hayden *v.* Man'f. Co., 29 Conn., 548; Owen *v.* R. R., 1 Lansing, 108; Haskin *v.* R. R., 65 Barb., 129; Wright *v.* R. R., 25 N. Y., 562; Laning *v.* R. R., 49 Id., 534; Gibson *v.* R. R., 63 Id., 449; Wonder *v.* R. R., 32 Maryland, 411; Railroad *v.* Barber, 5 Ohio St., 541; Gildersleeve *v.* R. R., 33 Mich., 133; Toledo R. R. *v.* Eddy, 72 Ill., 138.

*D. Webster Dougherty* (*Daniel Dougherty* with him), for defendants in error.—The master does not warrant a servant's safety; he is, however, under an implied contract with those whom he employs to adopt and maintain suitable instruments

and means with which to carry on the business in which they are employed. This includes an obligation to provide a suitable place in which the servant, being himself in the exercise of due care, can perform his duties safely and without exposure to dangers that do not come within a reasonable scope of his employment: Johnson v. Bruner, 61 Pa. St., 61; Green and Coates P. R. W. Co. v. Bresmer, 1 Out., 103; Cayzer v. Taylor, 10 Gray, 274; Gilman v. Eastern R. R. Co., 10 Allen, 233; Coons v. New Bedford Cordage Co., 102 Mass., 572.

In the case of Philadelphia. Wilmington and Baltimore R. R. Co. v. Keenan, 7 Out., 124, it was held that the court below was right in submitting to the jury the question whether the company had exercised reasonable care to adopt and maintain suitable instruments and means to carry on the business in which the servants were employed.

Burke was no more the fellow workman of Messrs. Ogden and Sidebotham than the vice-president and general manager of a railroad would be the fellow workman of a brakesman or switch-tender. They were not engaged in the same common work, nor were they performing services for the same general purpose. Burke's only duty was to sponge and examine cloth. Messrs. Ogden and Sidebotham were the representatives of plaintiff in error, with entire charge of the whole establishment, having control of over three hundred men, and having several subordinate bosses and foremen under them. They had all the power and discretion of a master, gave all orders to the men, took on and discharged employees, made contracts for the firm, and, as appears by the evidence, made these alterations without consulting Wannamaker, he not coming to the store at that time more than once or twice a week. Surely it is preposterous to contend that a master can delegate such powers as these to one in his employ, by simply calling him a servant instead of a representative, make him a fellow workman, within the meaning of the rule, with the humblest man in his employ, and thereby escape the liability for his negligence.

Burke was not a fellow workman of Ogden and Sidebotham: Mullen v. S. S. Co., 78 Pa. St., 31; Lehigh Valley Coal Co. v. Jones, 5 Norris, 432; Keystone Bridge Co. v. Newberry, 15 Id., 249; Pennsylvania & N. Y. Canal & R. R. Co. v. Leslie, 42 Leg. Intel., 267.

Mr. Justice PAXSON delivered the opinion of the court, January 25th, 1886.

The first and second assignments may be considered together. They allege error in the answer of the court to the defendants' first and second points. While differing in

[Wannamaker *v.* Burke.]

phraseology they raise substantially the same question. The second point is as follows: " That if the jury believe the hole was for a useful purpose, a means of conveying the waste and sweepings to the cellar of the building, and in such a position in the room as not to be in the ordinary line of travel, the fact that it was uncovered or covered by boards laid across it at the time of the accident is not evidence of negligence upon the part of the defendants, and their verdict must be for the defendants." The court below declined both points.

We do not understand the facts of which this point is predicated to be disputed. The action was brought in the court below for injuries received by plaintiff while in defendants' employ, by falling into a hole in the floor of one of the upper stories of the building in which their business is conducted. The defendants have a large tailoring establishment at the corner of Sixth and Market streets in the city of Philadelphia. The building is several stories in height. The room in which the accident occurred was in one of the upper stories and had, up to a few days previous to the occurrence, been used as the shirt manufactory, which was a branch of defendants' business, but it had been concluded to convert it into a cloth sponging room, and at the time of the accident the moving of the shirt department out, and the cloth department in, was being proceeded with. Some alterations of the room were necessary in order to adapt it to its new use, and the carpenters connected with the establishment, plasterers and other mechanics were making said alterations, and the employees of the shirt and cloth departments were assisting in the moving. The hole into which the plaintiff fell was used in carrying on the shirt business, for the purpose of getting rid of the *debris* and waste necessarily incident to said business. It was the opening into a chute running down into the cellar; the dirt as it accumulated was swept up daily, and into the hole, from whence it fell down to the cellar where it was gathered up and taken away or destroyed. In size it was about fourteen inches square; it was situated one inch from the side wall of the room, and prior to the alterations had been protected from approach on one side by a rafter or girder which ran to the center of the ceiling, and on the other side by a railing about a foot from it, the railing serving the additional purpose of fencing a small room used as a shop to repair the sewing machines operated by the employees. It is not disputed that while so protected the hole was perfectly safe. A short time prior to the accident, in the course of the alterations referred to, the railing and machine shop were moved into the shirt room where they were needed, leaving the hole protected only on one side by the wall of the building and on

[Wannamaker v. Burke.]

the other by the girder referred to. The time consumed in the repairs was from two to four days, and during that time the hole was being used to carry the dirt caused by the repairs, such as broken plaster, &c., down to the cellar. When not so used it was covered by two pieces of board, and was so covered when the accident occurred. It was alleged, however, that the boards were too short, and were not fastened down to the floor. The plaintiff alleged that being suddenly called to assist with some goods he jumped with one leg over the girder, and fell with this leg into the hole, by means of which he sustained serious injury. The plaintiff denied that he was under the influence of liquor, indeed he swore he had not drank anything ; and the jury have found that he was not so much intoxicated as to contribute to the accident. That he was to some extent under the influence of liquor is plain enough if human testimony is of any weight, the evidence for the defence being overwhelming upon this point, while the only witness called for this purpose by the plaintiff swore that he smelled liquor upon his breath, and would not say that he was not intoxicated. That he was a man of intemperate habits was proved by a number of witnesses, one of whom was his own wife, called by the plaintiff himself. In view of the finding of the jury upon this point we do not predicate anything thereof ; it is only mentioned as a part of the history of the case, and to show the facts as they stood at the time the instruction referred to was asked by the court.

If the hole had been in the middle of the room, near a passage way, or where persons were accustomed to pass and repass in the regular course of business, it would have been perhaps a question for the jury whether leaving it uncovered, or insufficiently protected, even for a short space of time, was not negligence. But here was a small hole in the floor on the extreme side of the building, within one inch of the wall, outside of the ordinary walks of any one, which had always been carefully guarded until the alterations rendered it necessary to take the guards away ; which was being used constantly during the alterations to get rid of the sweepings ; which was only open for from two to four days while the alterations were in progress, and only open then when not in actual use ; which was intended to be, and was permanently covered as soon as the alterations were finished. And even as it was the plaintiff had to pass the obstruction of the girder before he fell into it. The defendants could not have anticipated such an accident as this as likely to flow from the condition of the hole at that time, and they are not to be held to a rule which would prevent the possibility of an accident. If they took reasonable care to provide a safe room for their em-

ployees to work in, it was all the law requires. It would be unreasonable to hold them to the same degree. of strictness during alterations to the building as might be required after such alterations were completed. The fact that alterations were being made in the presence of the employees was notice to them of the possibility of danger of some sort, and of the necessity of exercising greater caution.

None of the essential facts being in dispute the defendants had the right to call upon the court to declare the law. We are of opinion that the points referred to should have been affirmed.

It was not error to refuse the defendants' third point, in the precise phraseology in which it was worded. But we think it was error to refuse the fourth point. If the plaintiff knew of the hole in the floor before the accident, and continued working in the room without complaining to the defendants or manager of the business, and calling his or their attention to the danger, so that it might be remedied, under all the authorities he took the risk of accident. It was said in Mansfield Coal Company *v.* McEnery, 10 Norris 185: "It has been repeatedly held, in fact there is no conflict of authority upon this question, that where an employee has knowledge of machinery being defective and dangerous, and in the course of his employment continues to use it without notifying his employer of such defect and asking him to repair, he voluntarily accepts the risk, and cannot in case of injury from such cause recover damages therefor."

We also sustain the last assignment. Under the evidence the learned judge would have been justified in giving a binding instruction to find for the defendants.

None of the other assignments requires discussion.

Judgment reversed.