before us, an appeal "shall not operate as a supersedeas, unless ordered by the court below or the appellate court, or any judge thereof." Section 15 of the same act permits an appeal to be taken without security providing however that in such case it shall not operate as a supersedeas. This section also provides that its terms shall not apply to a corporation appealing on its own behalf, and unless bail be given to operate as a supersedeas its appeal shall be quashed. Section 5 of the act requires bail to be entered in the court from which the appeal is taken and Section 17 gives that court power to make "such orders as to right and justice shall belong relative to the security offered or entered, either as to approval thereof, addition thereto or substitution therefor." Under the above sections of the Act of 1897, and the Rules of Court, appellant was bound to present a petition for an order of supersedeas in accordance with the established practice set forth in the rules and not having done so the court acted within its power in making the order appealed from, and in directing the bond to be stricken off as not having been entered in compliance with law.

Judgment affirmed.

---

# Hanley, Appellant, v. Carnegie Steel Company.

*Negligence—Roofers——Dismantling roofs—Fall of workman— Obvious danger—Nonsuit.*

In an action by an employee to recover damages for personal injuries sustained as a result of the giving way under his weight of a part of the roof which he was engaged in demolishing, a compulsory nonsuit was properly entered where it appeared that the roof was of tin supported by purlines; that it was apparent that the tin was old, and that even when new would not have borne the weight of a man between the purlines; that while ascending the ladder to do the work plaintiff saw the nature of the construction of the roof; that while working on the top he stepped on a part of the roof unsupported by the purlines and fell, sustaining the in-

juries complained of; and that plaintiff had had fifteen years' experience in the roofing business, although not with the type of roof in question.

Argued Oct. 19, 1916. Appeal, No. 160, Oct. T., 1916, by plaintiff, from final order of C. P. Allegheny Co., April T., 1915, No. 198, refusing to take off compulsory nonsuit in case of James Hanley v. Carnegie Steel Company. Before Brown, C. J., Mestrezat, Moschzisker and Walling, JJ. Affirmed.

Trespass for personal injuries.

The facts appear from the following opinion by Mac-Farlane, J.:

The defendant was tearing down a mill constructed of wood, and the plaintiff, an employee, was sent by his foreman to the roof for the purpose of dismantling it. He went up a ladder on the inside and, part of the roof having been taken off, went through a hole, walked along a truss from which he stepped to the roof which immediately gave way and he fell through it to the ground sustaining serious injuries. The negligence charged in the statement is: (1) That the company failed to provide him with a safe place in which to work; (2) that it failed to warn him of the danger into which he was going; (3) that it failed to provide him with suitable safety appliances and guards for his protection; (4) that the sheet which collapsed was rotten and weak from age and that this was known to the defendant company, and it was negligent in failing to so inform him.

The building was at least thirty-one years old. It did not appear when the roof was put on, but part of it was of corrugated iron and part of flat sheet iron of 20 gauge. The roof had been replaced, part of it had been on more than twenty-three years and part of it put on ten or twelve years. The part where the plaintiff stepped was flat, was nailed to the wood structure, the pieces or scantlings to which it was attached, called purlines, were in

good condition and would support a man. Between the purlines were small strips of wood which had become dry and which would not hold a man even when new, and the sheet iron even in good condition would not support a man except where the purlines were. Some of the wood was in good condition when taken down and some of the strips were dry. To be safe, a man must find where the purlines were located and step on them. On account of the dirt and grease which had collected on the roof, the nails could not be seen by the plaintiff. The roof had been painted and there was no evidence that it had rotted nor that when painted the metal would rot, except the testimony of a roofer and sheet metal dealer that paint is liable to scale off and when it does so the sheet is exposed to the atmosphere, but he said in the same connection that if the sheet was properly painted and kept painted it would sustain a man.

Hanley's trade, for fifteen years, was roofing, and he had put on corrugated iron roofs and had worked at sheeting building but had never put on or dismantled flat roofing. Flat roofing was done by tinners. He had done roofing for the defendant company under the foreman who had charge of the dismantling of this building and who had given directions to the man who sent Hanley to the roof. Most of the time, while working for the company, Hanley belonged to a repair gang and had been helping carpenters in repair work. He testified that he may have done a little dismantling but that he could not say whether he had or had not worked at taking off the roof of this building on the other side, but said he had not been on this side of the building. Another witness testified that he had been on the roof at work in the morning of the day of the accident. Hanley said that he knew how sheets were put on but had never seen flat sheets put on, as they were an old construction before his time; that corrugated sheets were riveted while flat sheets were nailed and soldered. When he went up the ladder he could see the inside of the roof, but did not know

what kind it was except that it was of flat sheets; that the building seemed to be an old one and he supposed it was, but did not know; that roofers used "chicken ladders" to keep them from falling through, but could not use them in taking a roof off; that the roof looked in good condition and he could not see any defect in it when he was about to step on it.

There was evidence from which a jury might find that if he stepped between the purlines there was danger that he would fall through, not on account of the age of the roof but from the method of construction. There was testimony that such iron as was used would support a man, but other evidence that it would not do so between the purlines. In view of Hanley's testimony that he may have worked on the other side of the building, but was not sure, the testimony of his witness that he had done so should be taken as true, but we are not justified in assuming that the part on which he had worked was of flat sheets, for he stated that he had never dismantled flat roofing.

We have given this abstract of the testimony at length because the character of the plaintiff's answers require it.

His testimony that "chicken ladders" could not be used in dismantling and the absence of any testimony that any other appliance could be used meet the charge that there was negligence in failing to supply safety appliances and guards and counsel have not argued that this is a ground for recovery.

In view of the nature of the work to be done, there was no obligation on the part of the company to provide a safe place to work: Moore v. Penna. R. R. Co., 167 Pa. 495. In Clark & Loreday v. Liston, 54 Ill. App. 578, 579, it is said, "It is manifest that in the destruction of a building, there is not an attempt or obligation to make it or any part thereof secure; on the contrary the work of removal is one in which, in turn, each part of the structure is rendered insecure; this every workman un-

derstands." The question before us is whether the company was negligent in failing to warn the plaintiff and whether he assumed the risk. An employer is not bound to warn an experienced employee or one who, it has a right to assume, needed no instruction, but he is under the obligation to warn of a danger known to him and which was not open to the observation of a person of the employee's experience. In Iron-Ship Bldg. Works v. Nuttall, 119 Pa. 149, it was held that there was no duty to warn a carpenter of danger of a board being caught and thrown by a circular saw, although he was engaged to work as a bench-hand in the shop and had never done any work on a saw and had not particularly noticed it and was injured while engaged in removing material from the side of the saw, a job for which he had not been originally employed. In Keenan v. Waters & Son, 181 Pa. 247, it was held that an employer operating a laundry had a right to assume that a woman needed no instruction in operating an ironing machine, as she had been employed in the laundry for two years and had worked for several weeks at an ironing machine and the foreman, after questioning her, had watched her operate it. These cases are illustrations of the principle that an employer has a right to assume that an employee of intelligence and experience will gain some knowledge by ordinary observation.

When Hanley was on the other side of the building he saw the method of construction of the purlines and strips, but, assuming that he had not been there, he went through a hole in the roof and with his experience as a roofer must have seen what an ordinary observer could scarcely miss, that the flat sheets had not the strength of corrugated iron, that they were thin and he admits that he knew that the space between the purlines had nothing but the three-quarter inch strips and the sheets of tin, and he saw that the place next to the hole was necessarily weakened by taking away the sheets where the hole was made. He saw that the roof was covered.

with dirt and grease, and if there was a structural weakness it was as apparent to him as to the foreman or any other person representing the company.

The statement complains of deterioration and not of the construction, but it was not proved that the sheets had rotted.   It is common knowledge that unpainted sheet tin will rust and thus deteriorate, but the testimony did not show that it had not been kept painted.   A general statement that the roof was in bad condition was not admitted, although plaintiff had a right to show the physical condition of the sheets, whether they were exposed or had decayed.   This he did not do.

The knowledge and experience of the plaintiff known to the foreman justified the latter in assuming that it was not necessary to warn the plaintiff of the fact there was no support between the purlines, except that given by the wooden strips and the sheet tin and that this might not support a man.   It does not require the experience of a roofer to see that danger.   And, if it was weak from the outset, it was obvious that it might become weaker with age.

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*John E. Laughlin,* for appellant.

*John G. Frazer,* with him *Reed, Smith, Shaw & Beal,* for appellee.

PER CURIAM, January 8, 1917:

This judgment is affirmed on the opinion of the learned court below overruling the motion to take off the nonsuit.