## Searles, Appellant, *v.* Boorse.

*Evidence—Court records—Practice, C. P.*

1. Upon a motion for judgment non obstante veredicto, court records duly admitted in evidence, if unattacked, may be considered, no matter by whom offered.

*Negligence—Master and servant—Safe place to work—Reliance on employer's judgment—Proximate cause—Pleading—Plaintiff's statement.*

2. A master is not required to furnish a servant with a safe place to work where the latter is employed for the express purpose of assisting in the repair, demolition or alteration of a property partially destroyed by fire, or is engaged for the purpose of making a dangerous place safe.

3. In such case an employee who claims he assumed the risk because told by the employer or his vice-principal that the place was safe, must aver and prove in what respect the place was dangerous, that he acted in reliance upon the statement that it was safe, and that he was injured by reason of the danger to which he had thus called attention.

Argued March 26, 1919.    Appeal, No. 176, Jan. T., 1919, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1914, No. 1888, for defendant n. o. v., in case of Samuel Searles v. David Boorse.    Before MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.    Affirmed.

Trespass to recover damages for personal injuries.    Before STAAKE, J.

At the trial the jury returned a verdict for plaintiff for $2,000.    Subsequently the court entered judgment for defendant n. o. v.    Plaintiff appealed.

*Error assigned* was in entering judgment for defendant n. o. v.

*M. D. Hayes,* with him *Harry P. Felger* and *Francis M. McAdams,* for appellant.—As showing that the circumstantial evidence in the case at bar was sufficient to take the case to the jury, we cite the following authorities: Folk v. Schaffer, 186 Pa. 253; Hughes v. Fayette Mfg. Co., 214 Pa. 282; Lamb v. P. & R. R. Co., 217 Pa. 564; Fullick v. South Penn Oil Co., 260 Pa. 4; Madden v. Lehigh Val. R. R. Co., 236 Pa. 104; Mayers v. Atlantic Refining Co., 254 Pa. 544; Johnson v. Phila. House Wrecking Co., 55 Pa. Superior Ct. 623.

The law of this State seems clear to the effect that the employer is bound to adopt and use the method and system of work in ordinary use at the time, and that if he adopts a system which is not the usual one but is more dangerous than the usual one, and if the plaintiff while following such unusual and dangerous system is injured,

that the jury is justified in finding a verdict against the defendant: Liptak v. Kurrie, 244 Pa. 117; McGeehan v. Hughes, 223 Pa. 524; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625; Stewart v. Cent. R. R. Co. of N. J., 235 Pa. 311; Bardsley v. Gill, 218 Pa. 56.

*Samuel L. Borton,* with him *E. Cooper Shapley,* for appellee.—The burden was on plaintiff to show not only that the floor was defective and therefore collapsed, but that defendant knew it was defective, or ought to have known it, which means that if defendant is to be held liable, the plaintiff must show that defendant was ignorant of it through want of due care: Bradbury v. Kingston Coal Co., 157 Pa. 244-6; Purdy v. Westinghouse Elec. & Mfg. Co., 197 Pa. 257; Ely v. Pittsburgh, etc., Ry. Co., 158 Pa. 233; Wojciechowski v. Spreckles Sugar, etc., Co., 177 Pa. 57; Moran v. General F. E. Co., 259 Pa. 168.

OPINION BY MR. JUSTICE SIMPSON, April 21, 1919:

Plaintiff sued defendant to recover damages for personal injuries; the trial judge declined defendant's point for binding instructions, reserved another point to substantially the same effect, and submitted the case to the jury, which found a verdict for plaintiff; the court below entered judgment for defendant non obstante veredicto, and plaintiff appeals. We must, therefore, assume as true all the facts and inferences from facts which the jury might have found in favor of plaintiff, and reject all those unfavorable to him which the jury might have rejected; but unattacked court records duly proved and admitted in evidence must be given due weight, though appearing in defendant's testimony. From the standpoint stated, the facts are as follows:

Plaintiff and one Jacob Cottman, who were employees of defendant, were working for him in tearing out a portion of a building at the S. W. Cor. of 30th and Master streets in the City of Philadelphia, which had been partially destroyed by fire; and while so engaged plaintiff

received the injury of which he now complains. When he first brought suit for this injury, he averred in his sworn statement of claim, he was set to work "in the digging of a certain excavation in and about the said building......and while employed in digging the said excavation......close to a certain large wall......not shored, braced or protected,......said large wall collapsed and fell upon the plaintiff, throwing him to the ground and seriously injuring him about the head, neck, body, legs and arms, and injuring him internally." The record before us fails to disclose what was done with that suit, which was in another court than the one in which this case was tried. In the present case he sues for the same injury and alleges in his sworn statement of claim, he was sent to work on the fifth floor of the building, and while there "the floor upon which plaintiff was standing suddenly collapsed and gave way beneath him, and he was thrown from his position and was struck by a piece of timber which had fallen from overhead, in consequence of which he, the said plaintiff, was seriously injured about the head, neck, legs, body and arms, and was injured internally." This record is barren of any explanation of these contradictory statements.

The case was tried twice, and on the last trial, now being reviewed, plaintiff testified he and Cottman were engaged in getting a piece of burnt timber out of a shaft into which it had fallen, plaintiff going to the fifth story and pulling a rope attached to the timber, and Cottman pushing from below. Before going there he said to Cottman "Jake, I don't think it's very safe because you know how that floor is up there; I think it's pretty dangerous." And the latter said in reply "Yes, everything up there is perfectly safe and sound." No reason was given by plaintiff why he did not think the floor was safe, but his remark implies he was well acquainted with the situation. He says he found the "fifth floor was nothing but lumber that had fallen down from the house when the fire was—rubbish, and half brickbats, and one stuff and an-

other like that"; and while he was standing cater-cornered across the shaft and pulling and Cottman was pushing, and the timber was part way up, the floor at the edge of the shaft gave way, his foot slipped into the shaft, he threw himself backward, his back struck another piece of timber which was lying on the floor, and he was injured. This is his whole account of the accident. He admits nothing fell from above and struck him, and that at the first trial he testified he was injured by his back striking against the side of the shaft.

At this trial he called two witnesses, who testified the best way to do this kind of work would be to use a block and tackle, but as their answers related rather to convenience in doing the work, and as one of them said a block and tackle would not be needed unless the timber was wedged in, which this one was not, and the other that they were not needed until the timber got to the top of the shaft, which plaintiff says this piece did not, we may dismiss their testimony from further consideration. There is no other evidence antagonistic to the method used in getting out the timber.

In 3 Labatt on Master and Servant, Sec. 924, it is said the duty to furnish a safe place to work does not apply "where the injured servant was hired for the express purpose of assisting in the repair, demolition or alteration of some instrumentality, and the unsafe conditions from which the injury resulted arose from or were incidental to the work......or where the servant is engaged for the very purpose of making a dangerous place safe." In our own reports there does not appear to be any case identical with the present, but the principle above quoted is sound, and has been applied in the case of work being done, in Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185; Wannamaker v. Burke, 111 Pa. 423; and Walton v. Bryn Mawr Hotel Co., 160 Pa. 3. Everybody knows a fire weakens a building, and the work to be performed is to remove the insecure parts of the building that it may thereafter be restored and made safe. In such cases

the rule of assumption of risk peculiarly applies, and the requisite of a safe place to work does not: Hanley v. Carnegie Steel Co., 256 Pa. 44, 47-8. Apparently recognizing this fact, plaintiff seeks to avoid its effect by averring Cottman was a vice-principal, and he, plaintiff, had a right to rely on the assurance given him as above quoted. There are several reasons why this contention cannot be successfully maintained.

In the first place he does not aver the alleged fact. In his statement of claim, after setting forth every imaginable character of duty which defendant could owe to him, he says the accident happened "because of the improper method and system of said work, and of the dangerous condition of said building, and of the incompetent foreman and fellow workmen, and of the fact that the tools and appliances were not proper, and because the place in which the plaintiff was set to work was dangerous and unsafe." There was no proof of any of those matters except the alleged "improper method and system of said work," which has already been disposed of; and "the dangerous condition of said building" and "the place in which the plaintiff was set to work was dangerous and unsafe." As already pointed out his knowledge of the alleged "dangerous condition of said building" precludes him from complaining of the alleged unsafe place to work, so that there was nothing in his statement of claim upon which he could recover.

Moreover he was bound to aver and prove that in reliance upon Cottman's statement he proceeded with the work: 4 Labatt on Master and Servant, Sec. 1370 a. Therein also in section 1376, it is said the same rule applies in this class of cases as in "those in which there had been an explicit assertion by the master, or some agent for whose statements he was responsible, that certain conditions of which the servant had acquired knowledge, had been remedied, or that certain precautions to secure his safety would be taken." As regards this latter we·said, in Dobra v. Lehigh Valley Coal Co., 250 Pa. 313, 317: "He

did not, however, say that he relied on the alleged promise in continuing his work.  In order to overcome the defense of assumption of risk, in an action under the common law, the employee must show affirmatively, not only that he complained of the danger, and that the employer promised to correct it, but that in continuing to work he relied on that promise.  Otherwise he must be held to have assumed the risk."  The same rule is laid down in Ellett v. Lit Brothers, Incorporated, 264 Pa. 185.  In the present case there was no such averment or proof.  True, plaintiff went upstairs to do the work, shortly after the conversation with Cottman, but a reliance upon the statement can no more be inferred therefrom in this class of cases than upon the promise in the other, and in Dobra v. Lehigh Valley Coal Co., supra, no such inference was allowed.

So, too, this record is barren of proof showing in what respect plaintiff thought the floor was dangerous, and in what respect, if any, it in fact was dangerous.  All we are told is that it "gave way" at the edge and plaintiff's foot and leg went into the shaft.  There is no evidence that it was burned at the edge, or as to what caused it to give way or how it "gave way."  It certainly did not collapse, as plaintiff averred in his statement, for he does not allege it fell or there was a hole in it, and says he knows nothing about anything being wrong with the joists, which were under the floor all around the shaft.  His evidence is a conclusion and not the facts upon which the conclusion is founded.  In order to base a recovery upon the statement of Cottman, plaintiff was bound to aver and prove in what respect the floor was "pretty dangerous," that he relied upon the statement that it was "perfectly safe and sound," and was injured by reason of the danger to which he had called attention.

The judgment of the court below is affirmed.