# Sheets, Appellant, *v.* Sunbury & Northumberland Electric Railway Co.

*Negligence—Street railways—Park—Lessee of real estate—Public resort—Invitee—Measure of cars—Inspection—Binding instructions for defendant.*

In an action against a street railway company to recover damages for personal injuries, binding instructions for the defendant are proper where the evidence showed that the defendant was the lessee of a place of public resort; that the plaintiff became a passenger upon the defendant company's cars to this resort and while there was injured by the fall of a limb of a large oak tree; that upon inspection subsequent to the accident, it was discovered that the limb was spongy and decayed; that two days before the accident a severe electric storm accompanied by high winds had occurred; that on the day subsequent to the storm several employees of the defendant company made an inspection of

the park for the purpose of discovering and removing dangerous conditions; and that in the course of the work they made an examination from the ground of this particular tree and limb, and that there was nothing whatever to indicate that it was not in perfectly sound and healthy condition.

Argued May 6, 1912.  Appeal, No. 247, Jan. T., 1912, by plaintiff, from judgment of C. P. Northumberland Co., May T., 1909, No. 261, entering judgment non obstante veredicto in case of Philip Sheets v. Sunbury & Northumberland Electric Railway Co.  Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries.  Before AUTEN, J.

The jury found a verdict for the plaintiff for $5,922.50.

The following opinion was filed by AUTEN, J., granting judgment for the defendant non obstante veredicto:

On the evening of July 14, 1908, the plaintiff boarded one of defendant's cars in the Borough of Sunbury and became a passenger for hire to Island Park, then, and for some time prior thereto, in the possession of the defendant as lessee.  At this time the park was a place of public resort and a large electric sign, located in Sunbury, announced "Big Show at Island Park."

While at this park, later in the evening, a limb of a large oak tree, under which plaintiff was standing, fell, striking and seriously injuring him.

The only material question now requiring our consideration is whether the injury sustained was caused by the negligence of the defendant company.

Witnesses for the plaintiff, who saw the fallen limb lying on the ground the morning after the accident, testify it had broken into several pieces and that it was spongy and decayed, except a small portion of the heart.  Witnesses for the defendant however, declare that the portions of the limb were alive and that it had green twigs and leaves on it.  Two days before the

accident the neighborhood was visited by a severe electric storm accompanied by high winds.

It appears from the uncontradicted evidence that on July 13th, the day intervening between the date of the storm and that of the accident, several employees of the company made an inspection of the park for the purpose of discovering and removing dangerous conditions, if any, and that in this course of their work they made an examination from the ground of this particular tree and of the limb which, on the evening of the following day, fell and caused the injury to the plaintiff. These witnesses state positively that, as they observed the tree from the ground, there was nothing whatever to indicate that it was not in a perfectly sound and healthy condition, though it was noticed that an outer portion of it had previously broken off and disappeared. It is further testified on behalf of the defendant, and not denied by the plaintiff, that the opening of the park season, about the 15th of May, 1908, the defendant had several men engaged for a period of about two weeks in cleaning up the park, cutting down decayed trees and taking off limbs that were in bad condition, and that other and later inspections were made from time to time before the accident.   The portion of the limb which caused the injury was from seven to nine feet in length and eight or nine inches in diameter, and fell from a height variously estimated at from forty to seventy feet.

In Glase v. Philadelphia, 169 Pa. 488, it appeared that a number of adjoining buildings on the Schuylkill river, known as Fairmount Water Works were erected and owned by the city of Philadelphia.   The large roof surface was used by the public, upon the invitation of the city, as a place of rest and pleasure.   Plaintiff was injured by a fall caused by stepping upon a loose plate covering a man-hole in this roof.   The Supreme Court say: "It (the city) was not compelled to provide any such place of rest and pleasure but when it did so,

and invited the public to go upon it, clearly, according to all the cases, it owed to the public the duty of, at least, ordinary care."

In 1 Thomp. Neg. Sec., 996, the rule applicable to cases such as the one we are now considering is thus stated "The duty assumed by the owners of places to which the public thus resort in large numbers is manifestly analogous to that which the law imposes on carriers of passengers.   Nevertheless it has been measured by the standard of ordinary care.   Doubtless the true theory is that such persons assume the obligation of exercising reasonable care, and that what will be reasonable care will be a degree of care proportioned to the danger incurred and the number of persons who will be subjected to that danger.   A good expression of the rule of liability, applicable to such cases, is found in the English case to the effect that the proprietor of such structure is not a warrantor or insurer that it is absolutely safe, but that he impliedly warrants that it is safe for the purpose intended, save only as to those defects which are unseen, unknown and undiscoverable,—not only unknown to himself but undiscoverable by the exercise of any reasonable skill and diligence, or by any ordinary and reasonable means of injury and examination.   Such being the nature of the obligation, it is obvious that the proprietor of such a building is under a continuing duty of inspection, to the end of seeing that it is reasonably safe for the protection of those whom he invites to come into it; and that if he neglects his duty in this respect, so that it becomes unsafe, the question of his knowledge or ignorance of the defects which render it unsafe is immaterial."

Under the foregoing authorities, defendant was not obliged to warrant or insure the absolute safety of Island Park.   It did, however, impliedly warrant that the park was safe for the purpose for which the resort was used, save as to those defects which were undis-

coverable by the exercise of reasonable skill and diligence, or by ordinary and reasonable means by inquiry and examination. The defendant was also under the obligation of a continuing duty of inspection so that the park would be reasonably safe for the protection of those to whom the invitation to visit it was given.

Did the defendant comply with these requirements? Was there absence of the care required by the circumstances?

At the request of counsel for the defendant the jury were asked to find specifically whether the decay was open and obvious, or concealed and latent, and whether the inspections and examinations were the ordinary and reasonable inspections and examinations in common use. They found that the decay was open and obvious and that the inspections were not the ordinary and reasonable ones in common use. The questions propounded to the jury, to which they were requested to make special findings, did not indicate whether the observable condition of decay mentioned related to a time before or after the fall; and there is nothing in any of the answers to indicate that the jury found that the defect in the limb was open and obvious while it remained on the tree. Of course, the decayed condition was obvious after it had fallen, but there is not a scintilla of testimony tending to show that such condition was observable while it was attached to the tree; nor is there any evidence from which such inference could have been drawn. The question of the defendant's negligence in that regard is to be determined, not by what was discovered in the limb after the fall, but by what it did or omitted to do before the accident, and the uncontradicted testimony of several witnesses establishes the fact that upon an examination made by them from the ground the day before the accident there was no observable appearance of unsoundness in the limb; that it, in fact, then had a sound and healthy appearance. Likewise, the special finding as

to the method of inspection employed was absolutely without evidence to support it. And what other or different method should the defendant have adopted? The only other we can conceive of would have been by climbing the tree for the purpose of examination. But why require that the tree be mounted for such purpose when the limb appeared to be healthy and strong? If it were defendant's duty to employ such method of examination for this particular limb, then in order to protect itself from the charge of negligence it would be obliged to climb every tree and inspect every limb thereon, it matters not how healthy or strong might be its appearance upon inspection from the ground. This in our judgment would be an unreasonable requirement and would impose upon the defendant a greater degree of care under the circumstances than it was required to observe.

The jury evidently found from the testimony that the limb was decayed, and therefore dangerous. As the only evidence showing a condition of decay was that which related to its appearance after the accident, they must have inferred that by a proper method of inspection, the danger was observable before the fall. If, as we have already indicated, the method of inspection was all that was reasonably required, the jury must have further inferred that the dangerous defect in the limb was observable by that inspection. Such inference, however, is but a presumption with nothing but another presumption to support it, and this is never allowed. It is a matter of common knowledge that the limbs sometimes do decay while attached to the tree without any external evidence of such condition. The jury might, with at least equal reason, have inferred that, when inspected the day prior to the accident, the limb had the appearance of being perfectly sound.

After a careful consideration of this case, we are of the opinion that we should have directed a verdict for

the defendant and that our failure to do so was error. It is therefore now directed that judgment be entered for the defendant non obstante veredicto.

*Error assigned* was in entering judgment for the defendant non obstante veredicto.

*George B. Reimensnyder,* for appellant.

*J. Fred Schaffer,* for appellee.

PER CURIAM, July 2, 1912:
The judgment is affirmed for the reasons stated in the opinion of the learned judge of the Common Pleas.