## Kumke, Appellant, v. Best Kid Company.

*Negligence—Master and servant—Hoisting bale from truck—Falling bale—Evidence—Res gestæ—Nonsuit.*

1. In an action by a servant against a master to recover damages for personal injuries alleged to have resulted from defendant's negligence, it is necessary to show some specific act of negligence on the part of the defendant or the existence of conditions so obviously dangerous as to amount to evidence from which an inference would arise.

2. In an action by a servant against a master to recover damages for personal injuries occasioned by a bale of skins falling on plaintiff while he was employed in helping hoist bales from a truck to the second floor of defendant's building, the court does not err in entering a nonsuit where it appeared that plaintiff, who had never before helped unload wagons, was at the time of the accident engaged in holding the bales on the skid as far as he could reach from the ground; that the first bale, weighing 780 pounds, when part way up the skid slipped and fell upon the plaintiff; that there was ample room for plaintiff to escape the falling bale

by stepping to the right or left, or under the skid; that none of the hoisting apparatus broke or was out of order; and there was no evidence tending to prove that the injury to plaintiff was caused by the absence of a brake, or was due to any other negligence on the part of the defendant.

3. In such case the alleged exclamation of the son of the president of the defendant company, "Pop, I told you that machine was no good and you would kill somebody," is not admissible as part of the res gestæ, not emanating from the act or having any causal connection with it.

Argued January 12, 1914. Appeal, No. 238, Jan. T., 1913, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., Jan. T., 1911, No. 289, refusing to take off nonsuit in case of Julius Kumke v. Best Kid Company. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CARR, J.

On motion of defendant the trial judge entered a nonsuit. The court in banc subsequently refused to take off the nonsuit in an opinion by CARR, J., as follows:

This was a suit brought by the plaintiff for the alleged negligence of the defendant by which he was employed. The accident happened on December 27, 1910, between 3 and 4 o'clock in the afternoon while assisting to unload bales of hides from a wagon or truck, the end of which was about ten feet from the wall of the defendant's factory. A skid or plank was lowered from the second floor window or doorway to the end of the wagon or dray. The skid was about two feet or two and one-half feet wide and the sill of the doorway to which it was attached was twelve feet above the ground. To the bale, a rope was fastened which went to a block on the ceiling of the second floor, and then to a windlass on a hoisting engine on the same floor, twelve or fifteen feet back from the door or window through which the bale was pulled. The door or window was six by seven feet. The pulley at-

tached to the ceiling was about half way between the door and the windlass, and the hoisting was done by steam power.

The plaintiff was standing on the ground by the end of the wagon on one side of the skid, the foreman of the factory was on the other side, and the teamster on the same side as the plaintiff. A bale was being hauled up the plank or skid, but slid off on the side on which the plaintiff was standing, and crushed his leg. The plaintiff's regular employment was in scraping the skins, but upon this occasion he had been directed by the foreman to assist in unloading the wagon. He had been working inside the factory and had never helped to unload wagons before. The bale which slipped off the skid was the first hoisted from the load and was five or six feet high, more than four feet wide, and three or three and one-half feet thick, and weighed 780 pounds. Best, the president of the defendant company, was on the second floor working the lever of the hoisting machine and also his son, who was at the scales weighing the bales, about twenty feet away; and also a colored man, and another workman who wheeled the bales back to the scales to be weighed. No employee stood at the window or door towards which the bale was being pulled. The plaintiff was facing the skid and immediately in his rear was a pile of refuse from the factory six or seven feet high. It was about three feet from the skid, but there was clear space both on the right and on the left-hand side of the plaintiff, and when he felt the bale begin to slip there was nothing to prevent him from stepping under the skid, the end of which rested on the tail of the wagon, or to prevent him from moving to the right or to the left.

The negligence alleged was the failure to furnish a safe place to work; to furnish safe tools and appliances; to give proper instructions; to unload in a manner without risk of injury; to provide a wider and better con-

structed incline; and to exercise due care in the unloading of the bales.

It was shown that the plaintiff had been employed at the factory for four years prior to the accident. The hook, block and tackle, skid, engine, windlass, and other equipment used for hoisting the bales were properly attached and in proper order. The skid or planks upon which the bale was being hoisted neither slipped nor broke. No testimony appears which describes the windlass or hoisting machine as defective either in construction or operation, and in considering the claims of negligence, the first inquiry is how the accident happened. The plaintiff called four witnesses, but only two testified to the fall of the bale. The driver hooked the rope to the bale, and if it was improperly hooked, it was the fault of a fellow workman who was standing on the wagon by the plaintiff's side. The plaintiff's business was to hold the bales on the skid as far as he could reach. "I held on the skins as far as I was able and then I was unable to reach, I stepped on the side always and that time as I stepped on the side, it fell on me." Powlowski, the second witness was working on the second floor and did not see the bale until after it had fallen on the plaintiff. Dampman, the third witness testified as to what the cause of the accident was. He was standing in the boiler room door, about fifteen or twenty feet from where the bale was being hoisted. He said the driver put the rope around the bale and it started up and he hellooed up to Best to go ahead. Dampman did not know whether it was the foreman or one of the men who called to Best, but the bale went to about three or four feet from the door, and "it slipped off the skids and went over." He saw the bale go off the skid. "Q. How did it go off, roll off or what? A. It kind of slid off." The bottom of the bale when it fell was about five feet from the ground. Upon cross examination he repeated that he saw the bale roll off the skid, but did not see it strike the plaintiff. When the plaintiff was recalled, he said that he was

facing the board because he had to attend to the bale. "Q. By facing the board do you mean that you were facing the doorway into which the bale went? A. Yes, I had to look after the bale, of course, and after that I looked which way the bale was going. Q. Were you watching this bale when it fell? A. Yes, the bale was raised up high and I always held my hands as far as I could reach. I held my hand to the bale as far as I was able to reach the bale, and immediately the bale fell on me and that is all......Q. What did you do when the bale began to slip? A. I hadn't even time to run because it fell immediately on me. It was no room to hide myself."

The burden of proof was upon the plaintiff to show negligence on the part of the defendant. Merely to show that the bale slipped and fell is not sufficient. The place was entirely safe to work in. The slipping of the bale from the skid was not due to a dangerous condition of the space about which the plaintiff stood, and although there was a pile of dirt behind him three feet from the skid, there was ample room for him to escape the falling bale. The negligence charged of an unsafe place to work in was not proved.

With regard to the alleged failure to furnish safe tools and appliances, the testimony shows that nothing broke or was out of order. After the slipping of the bale from the skid, the rope remained hooked around the bale. The skid or planks upon which the bale was being hoisted neither slipped nor broke. An attempt was made by the plaintiff to show that no brake was used upon the engine. Several opportunities were given the plaintiff's witnesses to describe the parts of the engine and to state whether a brake was there. None of them took advantage of the opportunities and the leading questions asked by the plaintiff's attorney on the subject were properly ruled out. Moreover, it was not proved that the absence of a brake caused the slipping of the bale from the skid. Nor do the proofs show that the

rope unwound from the windlass after the bale slipped. No proof appears that a slack in the rope was seen after the bale slipped, and when the bale slipped from the skid, the force of gravity caused it to fall.   The absence of a brake did not cause the slipping of the bale from the skid, nor would a brake on the engine have prevented the bale from falling.   In the absence of proof showing that no brake was used on the engine and that if a brake had been there, it would have prevented the injury to the plaintiff, the offers of expert testimony were inadmissible, even assuming that the witness had qualified as an expert, which was not the case.   In other words, to entitle the plaintiff to recover, it was necessary that he should show some specific act of negligence on the part of the defendant or the existence of conditions so obviously dangerous as to amount to evidence from which an inference of negligence would arise: Diver v. Singer Manufacturing Co., 205 Pa. 170; and no instructions were necessary that the plaintiff should understand the danger in not stepping aside from a falling bale: Zuraw v. Paper Co., 232 Pa. 544.   Nor was the alleged exclamation admissible of the son of the president of the defendant company.   Powlowski was at least twenty-five feet from the window and after he heard the scream of the plaintiff he crossed that distance before he saw the plaintiff lying upon the ground with the bale on top of him, and then heard the statement offered, but it was inadmissible, because it did not emanate from the act, nor did it have any causal connection with it: Shadowski v. Pittsburgh Railways Co., 226 Pa. 537.

The motion to take off nonsuit is dimissed.

Plaintiff appealed.

*Errors assigned,* among others, were (1) in refusing to take off the nonsuit, and (2) in sustaining defendant's motion to strike out the testimony of witness Powlowski as to the exclamation of the son of the president of the defendant company at the time of the accident, to wit:

"Pop, I told you that machine was no good and you would kill somebody."

*Joseph R. Embery,* for appellant.

*Edward M. Biddle,* with him *Robert T. McCracken,* for appellee.

PER CURIAM, February 9, 1914:

The judgment is affirmed on the opinion of the court below dismissing the motion to take off the nonsuit.