## Miller *v.* Hickey, Appellant.

318

Argued November 16, 1950; reargued May 24, 1951. Before DREW, C. J. STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Ralph S. Croskey,* with him *Croskey & Edwards,* for appellant.

*Donald E. Hogeland,* with him *Maurice A. Hogeland,* for appellee.

OPINION BY MR. JUSTICE BELL, June 27, 1951:

Plaintiff brought an action in trespass to recover for personal injuries. The jury returned a verdict for plaintiff in the sum of $20,000. which was reduced by the court to $15,000. Defendant's motion for a new trial and for judgment n.o.v. was dismissed; judgment was entered on the verdict, and defendant took this appeal.

Defendant is the owner of a three story converted private dwelling at the northwest corner of 19th and Locust Streets, Philadelphia. Defendant entered into a

contract with plaintiff's employer, an independent contractor, dated June 15, 1946, under which plaintiff's employer agreed to "thoroughly scrape free of all loose and scaling particles . . . all metal work . . . including the fire escape" and to paint it with two coats of paint. Plaintiff was a foreman painter who was given charge by his employer of doing this job with three assistants. He testified that he was an expert in rigging and in scraping and in painting iron work, structural iron work, fire escapes and things of that sort; that he was familiar with the whole building trade, including fire escapes, from a boiler room to the finest home ever built in Philadelphia; that the manner of doing the work was left entirely up to him and that neither the defendant nor anyone except plaintiff's boss had any control over him.

Plaintiff and his fellow employees commenced to paint the house on October 14th. On October 15th he commenced work around 8 o'clock in the morning and exactly what happened thereafter is not as clear from the evidence as it should be. The following is a virtually verbatim summary of the pertinent testimony. Plaintiff testified that in order to find out what the conditions or situation was so that he could properly paint it, it was necessary to scrape the fire escape; that he might find that the wood or some of the iron was rotten after scraping it and that you could not paint over rust—you had to scrape rust before you painted it. *The drop,* erroneously called counter-balance, which is that part of the fire escape which is dropped and extends to the ground, *was down. Plaintiff had walked up the fire escape that morning.* With the help of one of his assistants he placed a plank from the extension ladder to the counter-balance along the alleyway which was under the fire escape. The plank was between 15 and 18 inches wide and 20 or 22 feet long and weighed about 25 pounds. The counter-balance was 28 or 30

inches wide. Plaintiff was working on the fire escape, cleaning, brushing and scraping it and had progressed to approximately 4 to 6 feet from the corner. He decided he needed some paint, turned around, *put his left hand on the outside rail, the rail gave way,* he grabbed with his right hand to hold on, fell head first, turned almost a complete somersault and landed on the sidewalk at a 30 degree angle.

The part of the fire escape from which he fell is approximately 4 or 5 feet long and ran parallel with the alley. It does not appear how high it was from the ground. The fire escape was made of steel pipe, pretty heavy, and about 2 inches wide. The counter-balance was made of steel and the handrail was a metal pipe about an inch wide.

After plaintiff fell he did not lose consciousness. He saw some evidence of debris and found the uprights on the far corner leading down to the counter-balance. *The pipe was corroded and deteriorated at the bottom of the upright* and he observed some narrow holes in the pipe. Among the debris there were several screws which had no threads on. *He did not see anything wrong with the upright before he touched the rail.* The only thing he did was to put his hand on the rail; he wouldn't say he pushed it; it fell out; he lost his balance and went down. He had not been warned by anyone that the fire escape or any part of the building was in bad condition except that it needed paint; *neither defendant nor anyone knew, prior to the accident, that the fire escape or any part of the building was in bad or dangerous or defective condition.*

Plaintiff repeated that before the accident happened the only thing he could see that was wrong with the fire escape or any part of it was that it and the whole building needed to be painted and that was what he was there for.

Concededly, the defect was not a structural one and the plaintiff and defendant and the court below *all considered and treated the defect as a latent one* of which neither plaintiff nor defendant had any knowledge.

Plaintiff produced three witnesses who were working with him on this job, James E. Moran, Edmund Meyers, and Cecil Rutter. None of them saw the accident but each looked up when they heard plaintiff scream. After plaintiff was taken to the hospital Moran saw debris and pipes and a whole section of the fire escape which was missing; he saw the end upright and both rails on the ground, after they had hit the ground, and the force of the impact had knocked all the loose scales and things off; *the pipe was corroded, almost rusted through; in bad condition.* Then Moran examined the fire escape. "It was very corroded, and one part—I went up, the inside rail right by the counterbalance, above the counter-balance, which would be on the inside wall, I gave a yank at it with my hand, and I pulled it away from the wall." It was not part of the same line that went overboard when Miller fell but it was part of the same structure on the inside. The part or fastening Moran pulled away from the wall was very rusted; "Also, the wood it was fastened to was very poor. It was weatherbeaten, and these little screws had no hold at all in there, they just came right out."

Defendant's theory of the accident is that which was set forth in Moran's written statement made several weeks after the accident (viz. November 5, 1946), in which he blamed the plaintiff's fall on the fact that when he and the plaintiff placed the plank over the railing of the fire escape, plaintiff put his weight against the rail and the railing gave way. However, the jury obviously believed Moran's (very different) testimony at the trial and therefore his prior written statement cannot be considered by any Court on a motion for judgment n.o.v.

Meyers saw plaintiff immediately after the accident and accompanied him to the hospital. On his return approximately three-quarters of an hour later he examined the part of the rail which had been attached to the fire escape ladder and which *was lying on the ground*. That part had sheared right off down where the joints are; then you could see the corrosion of the metal. The upright pipe was on the handrail probably in the middle of the section that was snapped off at the edge. Meyers did not see any other part of the fire escape on the ground except that piece of outside railing and it was the metal upright that broke off at the bottom.

Rutter saw plaintiff when he was in the air, falling. After the accident he saw on the ground the outside railing of the counter-balance and a section or about two parts of the fire escape was out. The outside rail of the counter-balance and the ladder hand-grab that goes into the building—he examined these parts and found they were rusting away.

This was all of plaintiff's evidence with respect to negligence.

The defendant offered in evidence the testimony of a maintenance inspector, William E. Blake, who was employed by Albert M. Greenfield & Co., defendant's real estate agent, to inspect fire escapes of properties in Philadelphia of which Greenfield & Co. were the agents, and to report anything which needed correction. Both plaintiff and defendant, strange to say, relied on the inspector's testimony. Blake was a maintenance inspector of buildings, external, internal, fire escapes and towers. He inspected the defendant's fire escape sometime in *June 1946* and again *in the middle of September 1946*, 4 months and 1 month prior to the accident. He found nothing wrong with the building or the fire escape except that the exterior should be painted and he recommended that the exterior of the building be painted and the fire escape be scraped and

painted. Both in his inspection in June and in September he went up to the top of the building, came out through the fire tower, *walked down the fire escape, "looking for any loose bolts or broken rails or anything of that kind, put my hands on the rail at different places,* and if I find nothing loose, I do not recommend anything other than possibly to paint or a scrape job." He especially tried the counter-balance to see if it would go down and come up. He inspected *the fire escape for safety and found it was in good condition and,* except for scraping and painting, *was satisfactory and he was satisfied that if there had been a fire in that place the occupants could have escaped by way of the fire escape.* He looked for loose bolts or missing bolts or broken rails or anything of that kind; he saw some rust but no evidence of pitting. If he sees something that he thinks is pitted he takes out a double opener penknife and scrapes away the metal. He did not use his knife on either of these inspections because he didn't see any reason to do that since he could tell or thinks he could tell with his eyes. There was no rust on the piece of the fire escape that was broken off and lying on the ground when he examined it the afternoon of the accident and no evidence of pitting at that particular point, but it looked like it had been a shearing off of some kind.

*It will be instantly noted that plaintiff did not prove* or offer to prove that the inspection made by Blake was not a proper one or was not one that was customary in the trade, or *that a proper inspection would have disclosed the dangerous or defective condition of the part of the fire escape which broke.*

Plaintiff claims that defendant had a duty to make a reasonable inspection and that Blake's inspection was not a reasonable one and consequently the case was for the jury. Defendant contends (1) that he did not have to make any inspection, but if he did, Blake made

two inspections within a few months prior to the accident and that they were reasonable inspections and to require anything more would impose an unreasonable burden and a greater degree of care than the law requires and would make every owner an insurer; but that in any event and far more important (2) *there was no evidence that a reasonable inspection would have disclosed the defect and hence there was no proof of negligence;* and (3) plaintiff was an expert who knew far more about fire escapes than did defendant and he was engaged to scrape and paint the fire escape *and being an expert he assumed any risks that might be involved in his work thereon.*

In considering a motion by defendant for judgment non obstante veredicto, it is by now hornbook law that the testimony must be viewed in the light most advantageous to the plaintiff and all reasonable inferences from and all conflicts in the testimony must be resolved in plaintiff's favor: *McDonald v. Ferrebee,* 366 Pa. 543, 79 A. 2d 232; *Levenson v. Lustman,* 365 Pa. 244, 74 A. 2d 134; *Welch v. Sultez,* 338 Pa. 583, 13 A. 2d 399.

*An owner or possessor of land is not an insurer;* he is not charged with the absolute duty of having his premises in a safe condition but on the contrary, *owes to a business visitor or invitee only the duty of reasonable care* for his protection and safety, viz.: to keep the premises in a reasonably safe condition and if there be any defects known or discoverable by the exercise of reasonable care and diligence, to warn the business invitee of these defects or dangers; *but for a latent defect of which an owner or possessor is ignorant and which could not be discovered in the exercise of reasonable care and diligence he is not liable: Lentz v. Allentown Bobbin Works,* 291 Pa. 526, 140 A. 541; *McCreery v. Westmoreland Farm Bureau,* 357 Pa. 567, 55 A. 2d 399; *Sorrentino v. Graziano,* 341 Pa. 113, 17 A.

2d 373; *Newingham v. Blair*, 232 Pa. 511, 81 A. 556; *Vetter v. Great Atlantic & Pacific Tea Co.*, 322 Pa. 449, 185 A. 613; *Bechtel v. Franklin Trust Co.*, 120 Pa. Superior Ct. 587, 182 A. 800.

Moreover plaintiff in order to recover has the burden of proving that the defendant was negligent. Negligence is never presumed and the mere happening of an accident is no evidence of negligence and is not sufficient to take a case to the jury: *Thompson v. Gorman*, 366 Pa. 242, 246, 77 A. 2d 413; *Houston v. Republican Athletic Assn.*, 343 Pa. 218, 22 A. 2d 715; *Direnzo v. Pittsburgh B. & I. W.*, 265 Pa. 561, 109 A. 279.

On the other hand, negligence need not be proved by direct evidence, but may be inferred from attendant circumstances if the facts and circumstances are sufficient to reasonably and legitimately impute negligence: *Rockey v. Ernest*, 367 Pa. 538, 80 A. 2d 783; *Bills v. Zitterbart*, 363 Pa. 207, 69 A. 2d 78; *Turek v. Pennsylvania R. R. Co.*, 361 Pa. 512, 64 A. 2d 779; *Randolph v. Campbell*, 360 Pa. 453, 62 A. 2d 60; *Wright v. Straessley*, 321 Pa. 1, 182 A. 682.

Considering all the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff, he not only failed to prove any specific negligence on the part of the defendant, or the existence of conditions *so obviously dangerous* as to amount to evidence from which an inference of negligence would legitimately arise, *but he likewise failed to prove that the defect could or should have been discovered by a proper or reasonable inspection. This failure is the touchstone of this case.*

This case is controlled by the very close and analogous case of *Lentz v. Allentown Bobbin Works*, 291 Pa. 526, 140 A. 541. A roofer sued the owner of a house for personal injuries suffered due to a break in a roof board which was rotten. The plaintiff had contracted to reroof the house. The defect was not known

to the defendant and according to this Court could not have been discovered by any superficial examination. *This Court refused to allow recovery,* reversed the court below and entered a judgment for defendant non obstante veredicto. In the course of the opinion, Mr. Justice WALLING said (pages 528, 529, 530): "The break disclosed that the board was rotten, a fact not previously known to plaintiff or defendant, and, so far as appears, not discoverable by any superficial examination. . . . It was therefore, to every intent and purpose, *a latent defect, and for an injury suffered thereby neither a master is liable to his servant, nor the owner to those lawfully upon his premises.** See Travers v. Delaware Co., 280 Pa. 335, 339; Desibia v. Monongahela Ry. Co., 262 Pa. 227; Moran v. General Fire E. Co., 259 Pa. 168; Sheets v. Sunbury, etc., Ry., 237 Pa. 153; Childs v. Crawford Co., 176 Pa. 139; Moore v. P.R.R. Co., 167 Pa. 495. *'A master is not liable for injuries resulting to a servant by reason of latent defects of which he was ignorant and which could not be discovered in the exercise of reasonable care and diligence':* 39 C. J. 435. . . . There is no suggestion of a structural defect or that the board in question was unsound when placed in the building. . . . *The mere breaking of the board did not prove negligence* (Kehres v. Stuempfle et al., 288 Pa. 534; Direnzo v. Pittsburgh B. & I. W., 265 Pa. 561), and beyond that nothing was shown, except the condition of the board disclosed by the break. *To hold the employer or property owner liable under such circumstances would place upon him an unreasonable burden which the law does not do. He is only required to use ordinary care to protect those lawfully upon his premises:* Newingham v. J. C. Blair Co., 232 Pa. 511; 29 Cyc. 483. This degree of care does not place upon the property owner the practically im-

---

\* Italics throughout, ours.

possible task of testing every roof board before removal of the old covering to make way for the new." Cf. also Restatement, Torts, §343.

In *Direnzo v. Pittsburgh B. & I. W.*, 265 Pa. 561, 109 A. 279, in an action by an employee against his employer to recover damages resulting from the fall of a girder, this Court entered judgment n.o.v. in favor of the defendant and in its opinion said, (page 563): " 'Except in the case of a carrier, the rule is uniform that where recovery is sought on the ground of negligence of the defendant, the burden of proof is on the plaintiff and in an action against an employer some specific act of negligence must be shown': Spees v. Boggs, 198 Pa. 112-116; see also Kumke v. Best Kid Co., 244 Pa. 126; Brown v. Westinghouse E. & Mfg. Co., 256 Pa. 403. In such case the mere happening of an accident raises no presumption of negligence against the employer: Ceen v. Wm. Cramp & Sons S. & E. B. Co., 249 Pa. 415; McDonnell v. Orinoka Mills, 241 Pa. 61; Wojciechowski v. Spreckels Sugar Refining Co., 177 Pa. 57, 63. In Diver v. Singer Mfg. Co., 205 Pa. 170, Mr. Justice FELL speaking for the court says, 'To entitle the plaintiff to recover, it was necessary that she should show some specific act of negligence on the part of the defendant, or the existence of conditions *so obviously dangerous* as to amount to evidence from which an inference of negligence would arise.' "

Another analogous case is *Sheets v. Sunbury & Northumberland Electric Railway Co.*, 237 Pa. 153, 85 A. 92. In that case plaintiff was injured by the fall of the limb of a large oak tree. Several days before the accident defendant's employees made an examination *from the ground* of this particular tree and found nothing to indicate it was not in a sound and healthy condition. Upon inspection subsequent to the accident it was discovered that the limb was spongy and decayed. The jury found that the limb was decayed and there-

fore dangerous and that the decay was open and obvious and that the inspections were not the ordinary and reasonable ones in common use. Nothwithstanding these findings of the jury, the Court in its opinion said (p. 157): *"Of course, the decayed condition was obvious after it had fallen, but there is not a scintilla of testimony tending to show that such condition was observable while it was attached to the tree; nor is there any evidence from which such inference could have been drawn. . . .* defendant was not obliged to warrant or insure the absolute safety of Island Park. It did, however, impliedly warrant that the park was safe for the purpose for which the resort was used, *save as to those defects which were undiscoverable by the exercise of reasonable skill and diligence, or by ordinary and reasonable means by inquiry and examination."* This Court affirmed the judgment, entered by the court below, for the defendant non obstante veredicto.

Another close and analogous case is *Kehres v. Stuempfle*, 288 Pa. 534, 136 A. 794. In that case plaintiff was injured by the collapse of a shed in which he was working. He never saw anything prior to the accident which caused him to believe the shed was in a dangerous condition, but four witnesses who examined the shed after it collapsed testified that the nails were rusted and corroded and some of the timbers had dry-rotted. The entry of judgment n.o.v. was affirmed, *since the defect was a latent one.*

It is very important that a fire escape be maintained in a safe condition; it is equally important that a bridge be kept in a safe condition. In *Travers v. Delaware County*, 280 Pa. 335, 124 A. 497, a large number of people went on a county bridge which collapsed and injured plaintiff. The supporting plate was removed after the accident and found to be in a defective condition. The crack might have been discovered by tapping

with a hammer but not by a visual examination. The Court sustained the nonsuit holding that the accident was the result of a latent fracture in a lawful structure. The Court in its opinion said (pp. 340-341) : ". . . a competent engineer,—. . . reported a necessity for certain repairs, which were promptly made. . . . He discovered no fault in the iron-work, *though that possibly might have been done if other methods had been followed, as suggested by the two experts.* . . . A careful consideration of all the testimony, *in the absence of some proof that the break should have been observed had ordinary care been exercised,* leads to the conclusion that the court below correctly held that *the proof of negligence was insufficient* to justify the submission of the case to the jury."

Still another analogous case is *Phila. Ritz Carlton Co. v. Phila.,* 282 Pa. 301, 127 A. 843. In that case a sleeve in a water pipe of the city broke and water entered the basement of the hotel causing damage to the machinery and personal property there stored. The Court said (pages 304-305) : "Under such circumstances, the court properly refused to permit a recovery. *There was no evidence from which the jury could find that the defect was observable* (Case v. Lehigh C. & N. Co., 248 Pa. 598), *or discoverable, had proper inspection been made* (Herron v. Pittsburgh, 204 Pa. 509) ; in either of which event a recovery could be had, if the right depended solely on proof of negligence. Here, the defect was latent, and a reasonable examination, such as was given, did not disclose it. No verdict for the plaintiff was therefore permissible : Travers v. Delaware County, 280 Pa. 335; Murdaugh v. Oxford Borough, 214 Pa. 384; Childs v. County of Crawford, 176 Pa. 139; Sack v. Ralston, 220 Pa. 216. 'The unbending test of negligence in methods, machinery and appliances, is the ordinary usage of the business': Titus v. Bradford, etc., R. Co., 136 Pa. 618. There is nothing

in this case to show a failure to adopt reasonable precautions to prevent breaks in the pipe, or, when repairs were made, that other than approved means were adopted to secure renewed safety. It did not appear that the discovery of the small leak, supposedly from a sand hole, would lead an inspector to the belief that a new line of sleeve was required, or that a failure to so find indicated a lack of exercise of proper care. Because the accident might have been prevented by adopting some special method or device, when such is not commonly done by reasonably prudent persons under similar circumstances, does not prove negligence: Kilbride v. Carbon, etc., Co., 201 Pa. 552. There was nothing to indicate that the sleeve, which gave way and caused the injury, was defective or improperly attached. The hidden and undiscovered flaw in the iron caused the break, and, for the consequences, the defendant cannot be held liable here."

In *Pieckowicz v. Oliver Iron & Steel Co.,* 351 Pa. 209, we said (p. 212-213) : " '. . . Plaintiffs rely entirely upon inference to charge the defendant with notice. The fact that the wall fell is not of itself sufficient: Kehres v. Stuempfle, 288 Pa. 534, 539, 540, 136 A. 794; Bechtel v. Franklin Trust Co., 120 Pa. Superior Ct. 587, 182 A. 800. Walls of abandoned buildings have been known to stand not only for years but for centuries. *It was incumbent on plaintiffs to show some condition existing before the accident that would lead a person exercising reasonable and ordinary care to believe that the wall was likely to fall':* Riebel et al. v. Land Title Bank & Trust Co., 143 Pa. Superior Ct. 136, 17 A. 2d 742."

Both appellant and appellee rely on *Newingham v. Blair Co.,* 232 Pa. 511, 81 A. 556, supra. In that case plaintiff was engaged to repair a roof and was directed or allowed to use a fire escape in order to reach the roof. There was a defect in the fire escape; it broke, and plaintiff was injured. Plaintiff proved not only the

defect in the broken fire escape, but went further *and proved that the defective condition of the fire escape could and would have been discovered if a proper examination or inspection were made.* That of course distinguishes that case from the present case. However, the Newingham case supports the defendant in that the court specifically held (page 520-521): "In White's Supplement to Thompson on Negligence, sec. 979, what seems to be a sound general rule is thus expressed: 'It is the rule that the owner of property owes to an independent contractor and his servants at work thereon, the duty of exercising reasonable care to have the premises in a safe condition for the work, unless the defects responsible for the injury were known to the contractor. *It is to be observed that the owner is not charged with the absolute duty of having the premises safe; his duty is discharged by the exercise of reasonable care.'*"

There is one point which was not presented by the parties but which has given us concern. A dozen or more cases lay down *an exception* to the hereinabove mentioned rule or principle of negligence (which has been established by a myriad of cases) viz.: " 'When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care.' " *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, 504, 32 A. 44; *Durning v. Hyman,* 286 Pa. 376, 133 A. 568; *Bills v. Zitterbart,* 363 Pa. 207, 69 A. 2d 78; *Skeen v. Stanley Co. of America,* 362 Pa. 174, 66 A. 2d 774.

Great care must be exercised to limit and restrict this so-called Rule or exception to cases (a) which are

exceptional, and (b) where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant: *Rockey v. Ernest*, 367 Pa. 538, 80 A. 2d 783; *Norris v. Philadelphia Electric Co.*, 334 Pa. 161, 5 A. 2d 114; *Dickey v. Boggs & Buhl, Inc.*, 345 Pa. 453, 29 A. 2d 1. Were it otherwise and were the exception applied literally, it would nullify and destroy the long settled and well established principles of negligence. For example, where an automobile injures a passenger or pedestrian, or injuries result from a defect in a sidewalk or from a defect in a highway or bridge owned by a township or county, the automobile or the house or the sidewalk or the bridge which caused the injury was under the management of the defendant and the accident would not happen in the ordinary course of things if those who had the management had used proper care, yet the exception or rule requiring a defendant to explain or to prove that he exercised due care *certainly does not apply.*

Even in the leading case of *Durning v. Hyman*, 286 Pa. 376, 133 A. 568, where a child sued a moving picture theater for injuries caused by the breaking of a seat, the Court in removing a nonsuit said: "The defendant, in such instances, is called upon to show, not necessarily the cause of the accident, but *that he exercised due care to prevent harm:* Spees v. Boggs, 198 Pa. 112. *If such facts appear* in the testimony of the plaintiff, a nonsuit should be entered (Stearns v. Ontario Spinning Co.; 184 Pa. 519), or, if established in defense, *binding instructions are properly given,* but in one way or the other, a satisfactory explanation is required. . . . She had the right to rely on the assumption that the defendant had used reasonable care for her safety. Her proof made necessary some explanation by defendant showing due precaution had been exer-

cised to prevent the happening of the accident which occurred."

Similarly, in *Bechtel v. Franklin Trust Co.,* 120 Pa. Superior Ct. 587, 182 A. 800, the trust company was in exclusive possession of a basement floor where the plaintiff was lessee of a safe deposit box. A portion of plaster from the ceiling fell upon her and injured her. *The vault attendant testified that he never saw anything wrong with the plaster.* The Court affirmed the lower court's entry of judgment for the defendant n.o.v. and said that the duty of the owner was to use reasonable care in protecting the invitee only as to dangers which are seen or known or discoverable.

On the other hand, where a jury may infer negligence on the part of the defendant from excessive speed or from driving on the wrong side of the road or from running off the road or from a trolley or railroad train jumping the track, it seems to us that the aforesaid exception is inapplicable and unnecessary and if the rule is quoted in an opinion in such a case it would not constitute an authority that this exception to the long and well established principle of negligence applies to all such cases.

That this exception was never intended to displace or nullify the general rule of negligence is, we believe, clear from *Wright v. Straessley,* 321 Pa. 1, 182 A. 682 and *Logan v. Bethlehem City,* 324 Pa. 7, 187 A. 389. In *Wright v. Straessley* plaintiff was a passenger in the rear seat of defendant's automobile. There was no traffic approaching from the opposite direction; suddenly and without warning, the car ran over a curb and hit a pole. Although this Court quoted *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, 32 A. 44, and cited other cases which followed *Shafer v. Lacock,* and even though the automobile was under the management of the defendant, Mr. Justice MAXEY said (page 4) : "The burden of proof is never on the defendant in a case of this

kind. Under certain circumstances the burden of coming forward with evidence may shift to the defendant but that is an entirely different matter from 'burden of proof'. . . . There is a class of cases in which accidents are attended by circumstances from which the inference of negligence is legitimate. But in such cases negligence is not a presumption of law. . . . Negligence cannot be presumed from the mere fact of the happening of an accident, but it may be inferred from the attendant circumstances. Juries should be instructed that the burden of proving negligence is on him or her who asserts it, and that *a defendant is not called upon to come forward with countervailing evidence until the plaintiff has established negligence by direct or circumstantial proof.*"

In *Logan v. Bethlehem City*, 324 Pa. 7, 187 A. 389, this exact question was raised and decided. A plaintiff sued for injuries resulting from being struck by a motorcycle operated by defendant's police officer, which was obviously under the management and control of the defendant. This Court in its opinion first quoted the charge of the court below and said (p. 12) : " 'If the jury finds that the instrument causing the injury here complained of was under the management of the defendant or its agents, and the accident is such that under ordinary course of events would not happen if the operator of the motorcycle had used proper care, it affords reasonable evidence in the absence of satisfactory explanation by the defendant that the accident arose from the want of care.' In consequence of this instruction, the trial judge permitted the jury to presume negligence on the part of the police officer operating the motorcycle, from the mere happening of the accident. *This was error. Negligence cannot be presumed on the part of defendant's employee even in the absence of a satisfactory explanation on his part as to how the accident occurred, or even in the absence*

*of exculpatory evidence by him.* Negligence, or a failure to exercise due and proper care, must be affirmatively shown by plaintiff in order to sustain a verdict."

*In our judgment the aforesaid exception is not applicable to the present case;* but even if it were applicable it has been met by the defendant and consequently, the defendant is entitled to a judgment n.o.v.

Both appellant and appellee devoted much of their argument to the question of whether plaintiff was barred because he had assumed the risk of his employment. It is unnecessary for us to decide this close question in view of the fact that we have already decided that plaintiff failed to prove negligence on the part of the defendant.

Judgment is reversed and is here entered for the defendant non obstante veredicto.

---

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

I am of the opinion that the negligence of the defendant in this case was for the jury and I would uphold the verdict in plaintiff's favor as reduced in amount by the lower court.

After reviewing at length the evidence adduced by plaintiff and defendant respectively, the majority opinion states: *"It will be instantly noted that plaintiff did not prove* or offer to prove that the inspection made by Blake was not a proper one or was not one that was customary in the trade, or *that a proper inspection would have disclosed the dangerous or defective condition of the part of the fire escape which broke."* (Italics, the author's) It was not incumbent upon plaintiff to prove that there had not been a proper inspection of the fire escape. This was a matter of countervailing proof by the defendant. Plaintiff's burden was to establish that the defendant knew or *ought to have known* that the fire escape was not in a reason-

ably safe condition for the performance of the task required of him.

A possessor of premises owes to a business visitor the affirmative duty to keep the premises in a reasonably safe condition or to warn him of dangerous conditions of which the possessor has, or should have, knowledge. Where there is no patently obvious danger, a business visitor is not required to make an independent survey to determine whether the possessor of premises has performed his duty of exercising due care for the safety of the business visitor: *Kulka v. Nemirovsky*, 314 Pa. 134, 170 A. 261; *Debenjak v. Parkway Oil Company*, 159 Pa. Superior Ct. 603, 49 A. 2d 521. A business visitor is defined in Restatement, Torts, Section 332, as ". . . a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." And this includes those coming upon the land for a purpose connected with their own business which itself is directly or indirectly connected with a purpose for which the possessor uses the land: See *Straight v. B. F. Goodrich Company*, 354 Pa. 391, 394, 47 A. 2d 605; *Musto v. Lehigh Valley Railroad*, 327 Pa. 35, 39, 192 A. 888. In the instant case plaintiff was a business visitor and under all the evidence the jury could find that defendant did not perform the duty owed him to maintain the fire escape in a reasonably safe condition for the performance of the work undertaken.

As stated in the majority opinion, ". . . negligence need not be proved by direct evidence, but may be inferred from attendant circumstances if the facts and circumstances are sufficient to reasonably and legitimately impute negligence:". And as also stated therein, ". . . the testimony must be viewed in the light most advantageous to the plaintiff and all reasonable inferences from and all conflicts in the testimony must be

resolved in plaintiff's favor:". So considered, the jury
was clearly justified in finding from plaintiff's proofs
that the western end of the fire escape (a most im-
portant part at the turn leading to the drop) was in
a weakened and dangerous state and that its condition,
resulting from rust and gradual deterioration, ought
to have been discovered and remedied by the owner-
defendant. The house and fire escape thereon were old.
It was described as an "antique" building. When one of
the plaintiff's witnesses immediately after the acci-
dent gave a yank at a handgrip on the inside wall of
the building beside the ladder drop, it "pulled away";
it was "very rusted"; the wood to which it was fastened
was "very poor", "weatherbeaten" and the "screws had
no hold at all in there, they just came right out." The
plaintiff testified that the railing that gave way was
corroded and deteriorated at the base—"You could
see small narrow holes. . ." in it. Screws that had ap-
parently fallen with the railing "had no threads".
Moran, a fellow workman, testified that a whole sec-
tion of the railing at the west end fell to the ground
and that the upright referred to by plaintiff, and other
parts of the railing were found to be "corroded, al-
most rusted through." The other two fellow workmen
testified to the same effect.

Defendant's countervailing evidence consisted sole-
ly of the testimony of William E. Blake who said he
had twice inspected the fire escape; that he looked for
missing bolts, nuts or broken parts and apparently
made a limited spot check of the railing. He stated
that the fire escape was rusted and there was the pos-
sibility of pitting underneath. However, he did not
scrape it at any point, stating that "I can tell, or at
least I think I can tell with my eyes." The trial judge
in his charge left to the jury whether there had been
a proper inspection. This was apparently upon the
theory that defendant was responsible for the negli-

gence, if any, of his agent's employe and no objection was made or issue raised by the defendant in this regard. The jury could well have found that under the circumstances this was entirely too casual an examination, and patently insufficient for a structure or instrumentality designed to carry safely persons in numbers, hurriedly escaping from fire. This inspector produced no reports of his inspections (although he stated he had made one in his first inspection in June) and apparently he was daily engaged in the inspection of numerous buildings. Indeed the jury could have found that no inspection had been made by him. They had the right to reject any and all oral evidence adduced by the defendant. In any event, Blake's testimony was for the jury. See *Hardy v. Philadelphia National League Club,* 99 Pa. Superior Ct. 326 (allocatur refused).

A case which is completely controlling here is *Newingham v. The J. C. Blair Company,* 232 Pa. 511, 81 A. 556, where the plaintiff, employe of an independent contractor, was engaged in repairing defendant's roof and at the direction of the defendant, used an outside fire escape to go to and from the roof. While descending the fire escape, one of its platforms gave way, causing the injuries sustained. The Court in upholding liability said at page 520: "To be sure the use which the defendant company directed should be made of it by the plaintiff, was not the ordinary office of a fire escape, but it was apparently not an improper use, and at any rate it was placed at the disposal of the plaintiff and his fellow workmen, by the express direction of the officer of the defendant company. In making use of the fire escape, as directed and required, the plaintiff had a right to rely on the presumption that the defendant had performed its duty in providing a reasonably safe means of access to the roof." In the instant case there was no direction to

use the fire escape in the accomplishment of its painting, but the necessity of its use is obvious. Photographs introduced into evidence demonstrate this and there was no contention by defendant that the plaintiff should have used other means. The only distinction between the *Newingham* and the instant case is that in *Newingham* the defendant's negligence was the failure to make an inspection, and here (if consideration is given to the witness Blake's testimony) the failure to make a *proper* inspection—a distinction without difference. Also pertinent in this connection are *Straight v. B. F. Goodrich Company,* supra; *Debenjak v. Parkway Oil Company,* supra; *Kulka v. Nemirovsky,* supra.

*Lentz v. Allentown Bobbin Works,* 291 Pa. 526, 140 A. 541, which the majority opinion principally relies upon as controlling, is clearly distinguishable. There an injured roofer was engaged in *reroofing.* His use of the roof was in the performance of the specific task undertaken. Unlike a fire escape, a roof ordinarily is not designed to be walked upon. Its examination must necessarily be superficial. It cannot be thorough enough to insure safety for those who walk or work on it without its removal, the very task in which the injured plaintiff was engaged. A fire escape, on the other hand, is designed to safely carry those who walk on it. There was no negligence established in the *Lentz* case with regard to inspection, while in the instant case there was sufficient evidence to find that the unsafe condition of the fire escape could readily have been ascertained by an inspection properly made. And, as said before, the jury was free to disbelieve in whole or in part testimony in this regard adduced by the defendant. None of the other cases cited in the majority opinion are similar in their facts or analogous. No one of them departs from the rule that a possessor of premises owes to a business visitor the affirmative duty to keep the premises in a reasonably safe condition and

protect him from dangerous conditions of which the owner has or ought to have notice.

Equally inapplicable are cases cited by defendant. In *Hotchkin v. Erdrich,* 214 Pa. 460, 63 A. 1035, defendant contracted with plaintiff's employer for work to be done at the top of a tall chimney stack. The plaintiff inspected and tested the rungs or iron bars of a crude ladder in the inside of a chimney as he ascended and the Court held it to be apparent from his own testimony that he was testing the safety of the ladder for himself, and was relying upon his own judgment. When one of the bars pulled out and he fell to the bottom of the stack, he was held to have assumed the risk. In *Myers v. Edison Electric Illuminating Company,* 225 Pa. 387, 74 A. 223, the danger arising from an uninsulated wire carrying electricity was held to be obvious and the risk of injury assumed by the plaintiff. In *Hanley v. Carnegie Steel Company,* 256 Pa. 44, 100 A. 543, plaintiff was injured as a result of the giving way under his weight of a part of the roof which he was engaged in demolishing. He assumed a risk that was incidental to the specific task undertaken. In *Nettis v. General Tire Company of Philadelphia, Inc.,* 317 Pa. 204, 177 A. 39, recovery was denied because although several ways of cleaning the windows of defendant's building were available, plaintiff selected the most dangerous method.

The doctrine of exclusive control is elaborately discussed in the majority opinion. No reliance was placed thereon by the plaintiff and no such contention was necessary. His case was otherwise amply established.

Defendant contended that conceding the duty ordinarily owed to business visitors by the owner of real estate to keep the premises in a reasonably safe condition, no such duty was owed to the plaintiff, admittedly an expert in painting structural iron work, in-

cluding fire escapes, because it was part of plaintiff's duty in connection with the painting to be done to discover latent defects in the structural condition of the fire escape. With this we cannot agree. The work called for was the painting only of the fire escape after the customary and necessary scraping and scaling. The contract covered the building and provided that "All the wood and metal work of the entire exterior front, sides and rear, including fire escape will be thoroughly scraped free of all loose and scaling particles, loose putty removed, and reputtied and receive two (2) coats of . . . paint . . .". It was an ordinary painting job of the entire premises. Plaintiff was to paint, not repair the fire escape, and he had a right to assume that it was in a sufficiently sound condition to permit its necessary use in the performance of his task. A fire escape from its very nature and the purpose which it serves must presumably be in safe condition for use at all times. The railing is a necessary component part, and, according to plaintiff's testimony, he did not exert undue pressure upon it. He said that he did not push against it and apparently was using it in a customary manner. It is to be noted that he had scraped the major portion of the fire escape without encountering any serious or dangerous corrosion, and was not engaged in scraping or painting when the accident happened, but on his way to obtain some paint for a fellow workman who was standing on the fire escape cleaning window frames. The situation was no different than if the railing had collapsed when he first went on the fire escape to commence his work.

Defendant relies upon *Valles v. Peoples-Pittsburgh Trust Company*, 339 Pa. 33, 13 A. 2d 19, in support of a contention that plaintiff failed in his proof of negligence in that no evidence was adduced establishing that his employer, an independent contractor, was not informed by defendant of the defective condition of the

fire escape. This Court held in that case that where an employe of an independant contractor sued the owner of a building in an action in trespass for injuries resulting from the maintenance of a *known* dangerous condition that the burden of proving that the owner failed to warn the independent contractor of the dangerous condition was upon the plaintiff. Where the owner has actual knowledge of the existence of a dangerous condition, he is not required to warn every subcontractor or laborer who comes upon the premises, but in such circumstances the extent of the duty is to warn the contractor of the existence of the dangerous conditions. See *Engle v. Reider,* 366 Pa. 411, 77 A. 2d 621. Where the owner is aware of the dangerous condition, the law with regard to the burden of proof is clear. The instant case, however, is clearly distinguishable from *Valles v. Peoples-Pittsburgh Trust Company,* supra, and *Engle v. Reider,* supra, in that there was no proof of actual knowledge by the owner of the alleged dangerous condition. There was no proof of actual knowledge and defendant's liability exists by reason of the finding of the jury that he would have known if a reasonable and proper inspection had been made.

The rule with regard to the burden of proof as enunciated in the *Valles* case and in *Engle v. Reider,* supra, has never been held by this Court to apply to cases other than those in which the owner had actual knowledge of the dangerous condition. A recovery by plaintiff in the instant case was not dependent upon proof of a failure by defendant to notify plaintiff's employer, Kooperman, of the defective condition of the fire escape.

Mr. Justice HORACE STERN and Mr. Justice JONES join in this dissenting opinion.