## Nossall v. Pittsburgh Plate Glass Company

*Martin D. Cohn* and *Kenneth R. Bayless*, for plaintiff.

*William S. McLean*, for defendant.

PINOLA, J., February 11, 1952.—Plaintiff, the operator of an electrical appliance store in West

Hazleton, brought an action in trespass against defendant company alleging that negligence of its employes while installing a new plate glass window in the store, about nine feet by five feet, caused it to break resulting in damage to certain radios and personal injuries to him. The jury having returned a verdict in favor of plaintiff for $500, defendant asks for judgment n. o. v.

In considering that motion, of course all the testimony must be viewed in the light most advantageous to plaintiff and all reasonable inferences from, and all conflicts in, the testimony must be resolved in plaintiff's favor.

Plaintiff testified that he did not know what happened until "the glass came crashing in." The day was calm but the weather was cloudy. The two employes of defendant had removed the broken glass and had placed the new plate glass in a position resting on the bottom of the frame, tilted toward the street. The workman named Van Jura, who has since died, declared: "I have a new man with me." He then telephoned defendant's office at Wilkes-Barre, and, according to plaintiff, asked "them to send an experienced man." Plaintiff argues that it is fair to infer from this that the inexperience of the associate contributed to the breaking of the glass.

Plaintiff offered no other testimony from which negligence of defendant could be inferred, but relied upon the doctrine of exclusive control to call upon the defendant for an explanation. Judge Pinola agreed, and therefore refused a compulsory nonsuit.

Defendant called the surviving employe, Joseph Bitzer, who testified that it was possible that too much stress or strain had been placed upon the glass by him and his associate while installing the large plate glass window, thus causing the run in the glass. He also

said a crack in the glass of one eighth of an inch would not be discernible except upon very close examination.

Mr. Joseph Smith, the manager of the glass department of defendant company, testified that when the sheets of glass were received at the warehouse, they were not examined but that a sheet of glass would be placed upon the table and examined when required for a job. He declared that it was possible for a run to have been caused during the transportation from Wilkes-Barre to Hazleton by some outside force, either by jarring or a pebble or stone thrown up by an automobile or thrown by some third party. There is no evidence that the workmen of defendant cleared the frame into which the glass was being fitted of any possible obstructions.

Bitzer testified that the glass was resting on the bottom, clips were in place, and the full weight of the glass was on his hands in the center, the top being tilted toward him about six to eight inches. His co-employe, Van Jura, was cutting or chipping off the left edge when suddenly the glass broke, as the result of a crack which began 20 inches from the lower right hand corner. There is no evidence that the employes of defendant company made any inspection of the glass at the scene, although Bitzer did say, on cross-examination, that up to June 1948 glass had broken while being installed on four occasions, and was asked:

"Q. Have you ever taken any precaution if it does happen it doesn't fall?"

He replied:

"A. Well, we pick any piece of glass and we look at it good because if it breaks it is going to get us. We always make sure to the best of our ability that a piece of glass isn't going to break."

From the language used it is apparent that the inspection to which he refers is that which took place at

the plant, because he said "we pick any piece of glass and we look at it good." The jury could very properly infer that the witness was referring to the selection of the particular plate or pane of glass at the plant.

Concerning the possible source of the crack, Mr. Smith testified as follows:

"Q. Is it possible that this glass could have had any defect in it when it arrived at the job?

"A. It could have been possible there may have been a slight run in the bottom of the plate or in any section of the plate and you couldn't see it. It could have come that way from the factory. When we get the plate glass, we get it in car loads. We don't inspect the perimeter of the glass at all. We just put them in the rack and when we get a call for a plate that size we put it on the truck and take it to the job and install it.

"Q. Is it possible it could run taking it over to Hazleton?

"A. It is possible. It could have been hit with a stone on the base of the plate causing a slight chip in it."

Again he testified:

"Q. Is there any way of telling as to why a run starts in a glass?

"A. No telling at all. It could be chipped and it could be started in transportation.

"Q. And how carefully do you examine these panes?

"A. When they come in from the factory?

"Q. Yes?

"A. Not very minutely at all.

"Q. It is possible a minute run could be seen by careful inspection that could have caused the run?

"A. I would say, yes."

Again:

"Q. Whether or not it would be possible for a minute fracture to escape detection?

"A. Yes, it could be.

"Q. On the other hand it would be possible also to detect a minute crack on careful examination?

"A. You would have to look it over very carefully. There are a lot of times there is a run in a plate you couldn't even catch it.

"Q. (By the court) If you had inspected this particular glass before it left your plant the inspection might have revealed the defects in the perimeter, might it not?

"A. Oh, yes."

Again, redirect examination:

"Q. And it is also true, is it not, there might have been a run caused by jolting in transit?

"A. That is true."

There is no doubt that plaintiff had not, in the first instance, made out a case of negligence and that he cannot recover unless he can invoke the doctrine of exclusive control.

That doctrine is stated as follows:

When the thing which causes the injury is shown to be under the management of defendant and, the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from a want of care.

As Justice Bell pointed out in Miller v. Hickey, 368 Pa. 317, 331:

"Great care must be exercised to limit and restrict this so-called Rule or exception to cases (a) which are exceptional, and (b) where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant. . . . Were it otherwise and were the exception applied literally,

it would nullify and destroy the long settled and well established principles of negligence."

We realize that the doctrine of exclusive control is applicable only when defendant is in exclusive control of the instrumentality causing the injury: Ambrose v. Western Maryland Ry. Co., 368 Pa. 1, 11.

Here defendant had exclusive control of the plate glass up to the very moment of its breaking.

We are also aware that:

"The reason for the exception is that evidence of the cause of the accident is accessible to the defendant and not accessible to the plaintiff. The doctrine of these cases is not available to a plaintiff who is in an equal or better position to produce evidence of the negligence which caused the injury than the defendant": Rockey v. Ernest, 367 Pa. 538, 542.

Here plaintiff was not in an equal position with defendant to produce evidence of the negligence which caused the injury.

This case, we believe, is a proper one for the application of the doctrine. The glass is in the possession of a defendant which makes a specialty of installing glass. It knows what inspection should be made, it knows all the precautions which must be taken for a proper installation, and it is aware of the dangers attendant upon the handling and installation of plate glass. As its own manager pointed out, a crack or run could be caused by jarring in transportation or by a pebble thrown at the glass, and, therefore, it would seem that an inspection should have been made at the scene.

As the court pointed out in Durning et al. v. Hyman, 286 Pa. 376:

"The defendant, . . . is called upon to show, not necessarily the cause of the accident, but *that he exercised due care to prevent harm:* Spees v. Boggs, 198 Pa. 112. *If such facts appear* in the testimony of

the plaintiff, a nonsuit should be entered (Stearns v. Ontario Spinning Co., 184 Pa. 519), or, if established in defense, *binding instructions are properly given,* but in one way or the other, a satisfactory explanation is required." (Italics supplied.)

The same principle was stated by Chief Justice Maxey in Skeen et vir. v. Stanley Co. of America, 362 Pa. 174, 176, who said:

"For the absolving of the defendant from legal responsibility for an injury caused by the fall of this bolt on one of its patrons, it is only fair to call upon the defendant to show that it exercised due care to prevent harm to its patrons."

In remanding the case, he said (p. 180):

"In the instant case there was no exculpatory evidence. It may be that when the instant case is tried again defendant will be able to show either that the bolt was not a part of the theatre equipment and in no way under its control, or that the duty of inspection of the premises had been faithfully complied with, and, therefore, there was no basis for plaintiff's claim that 'the said bolt fell as result of the negligence of the defendant, in failing to properly inspect and maintain certain equipment and machinery of which the said bolt was a part.' "

In Feeney v. New York Waist House, 105 Conn. 647, 136 Atl. 554, where a plate glass window fell and injured plaintiff, who was passing along the sidewalk, the court held (p. 650):

"It was . . . incumbent upon the defendant to show that the fall of the glass and resulting injury did not occur through negligence on its part. . . . It was peculiarly within the power of the defendant to establish that the care required had been used in maintaining as well as in constructing the window, but the facts found fall short of disclosing a sufficient compliance with this duty; on the contrary, they show that the

defendant has not complied with its duty of inspection."

In this case defendant having made no examination of the glass at the scene of operation, the trial judge properly left it to the jury to determine whether defendant had exercised due care under the circumstances.

Had an examination made at the scene revealed no discernible defects in the glass, of course, the trial judge would have been bound to give binding instructions for defendant because then a cause would be apparent, other than those within defendant's control, to which the accident might with equal fairness be attributed: Sierocinski v. E. I. du Pont de Nemours & Co., 118 F. (2d) 531, 536 (3rd Circuit); Devine v. Bell Telephone Company of Pennsylvania, 298 Pa. 460.

It was the duty of defendant to provide against defects discernible upon reasonable inspection and to handle the glass with reasonable care: Coralnick v. Abbotts Dairies, Inc., 337 Pa. 344, 345. And it was also its duty to see that the frame into which the glass was being fitted was clear of all possible obstructions.

The jury was justified in finding that defendant had failed to do its duty. In our opinion, the circumstances fully warranted the jury in drawing the inference that there was negligence on the part of defendant, and, therefore, we cannot disturb its verdict.

The question of contributory negligence was properly left to the jury.

Accordingly, we enter the following

*Order*

Now, February 11, 1952, the motion for judgment n. o. v. is denied.